UNIVERSITY OF
LOUISVILLE, Appellant,

v.

John H. ISERT, III, Harriet Isert Johnson, and John H. Isert, III, Administrator of the Estate of John H. Isert, Jr., Appellees.

John H. ISERT, III, Harriet Isert Johnson, and John H. Isert, III, Administrator of the Estate of John H. Isert, Jr., Cross–Appellants,

v.

UNIVERSITY OF LOUISVILLE,
Cross–Appellee.

Nos. 86–CA–1070–MR, 86–CA–1123–MR.

Court of Appeals of Kentucky.

Dec. 4, 1987.

Robert F. Matthews, Kathie M. Mc-Donald, Greenebaum Doll & McDonald, Thomas H. Lyons, University Counsel, George S. Schuhmann, Louisville, for appellant/cross-appellee.

James Brown, John P. Reisz, Reisz, Brown, Rosenbaum & Foley, Louisville, for appellees/cross-appellants.

Before COMBS, COOPER and HAYES, JJ.

COOPER, Judge.

This is an appeal and a cross-appeal from an order of the trial court reforming a trust provision within a will pursuant to the language of KRS 381.216. On appeal, the substantive issues raised by the parties are whether the trial court erred in: (1) ruling that the trust language in the testator's will was voidable rather than void and thus able to be reformed under the language of KRS 381.216; and (2) reforming the trust itself by utilizing only one life-in-being rather than additional lives-in-being to determine the duration of the trust. Additionally, the appellees/cross-appellants argue that the appeal raised by the appellant/cross-appellee, University of Louisville, should be dismissed in that the issues raised herein were not timely raised before the trial court. Reviewing the record below, as well as the applicable law, we affirm in part, reverse in part and remand.

The procedural history giving rise to this litigation is as follows: on May 26, 1973, Isabel Isert Gray, testator herein, died leaving a holographic will together with three codicils. Mrs. Gray was survived by her brother, John H. Isert, Jr., together with his children, John H. Isert, III and Harriet Isert Johnson. Her will was probated on June 18, 1973. Her brother, John H. Isert, Jr., died on April 21, 1978.

The relevant portion of Mrs. Gray's will provided that the residue of her estate was to be held in trust for her brother with the income to be paid to him during his lifetime. Upon her brother's death, one-third of the trust in question was to be divided equally between John H. Isert, III and Harriet Isert Johnson. The remaining two-thirds of the trust was, under the language of the will, to be set aside in a scholarship fund in memory of her husband, Calvin S. Gray, and his grandfather, William Stephan, at the University of Louisville. As to the income from such scholarship fund, the will provided in part as follows:

> The income from the scholarship fund is to be invested and returned to the principal, unless the sum of $200,000.00 (two hundred thousand) has been reached, for ten years. Then at $200,-000.00 or the end of 10 years, the income from the fund is to be used toward the tuition of the descendants, and/or their husbands [and] wives, of John H. Isert and William Stephan. In case of divorce tuition ceases immediately for the husband or wife who is not a descendant. The income from the fund is to be divided equally among those qualified each year and is to be used for tuition at any graduate or undergraduate school at the University of Louisville. If there are no applicants among the descendants, the tuition shall be made available by the University to any deserving students....

In July of 1980, the appellee/cross-appellant, John H. Isert, III, both individually and as administrator of the estate of his father, John H. Isert, Jr., together with the co-appellee/cross-appellant, Harriet Isert Johnson, filed an action in the Jefferson Circuit Court seeking a judicial determination that the trust created under Mrs. Gray's will was a private non-charitable trust and void in that it violated the rule against perpetuities. Named as a defendant in that action were Raymond C. Stephenson, the executor of the estate of Mrs.

Gray, as well as the University of Louisville and Steven A. Beshear, the Attorney General of Kentucky. In seeking such a judicial determination, the appellees requested that the assets of Mrs. Gray's estate become a part of the trust and that all such trust assets be distributed equally between Isert, III and Johnson. Subsequently thereafter, on June 21, 1985, the trial court entered an order granting the appellees' motion for summary judgment, in part. (The original action had been consolidated with another circuit court action filed so as to reform the will to comply with the requirements of the Internal Revenue Code for charitable deductions.)

In this order, the trial court held that the provisions in the will relating to the educational trust created for the benefit of the descendants and/or their spouses of John H. Isert, Jr. and William Stephan "created a non-charitable, private trust which violates the rule against perpetuities and is void." Nevertheless, it specifically reserved entry of an order "reforming the will until such time as counsel has had an opportunity to address the issue. . . ." Attached to this order was a proposed order which the trial court stated that it was considering. That order, which ultimately became final, stated as follows:

> IT IS HEREBY ORDERED that the trust under the will of Isabel Isert Gray is reformed to provide that it will continue for the benefit of the descendants of Isert and Stephan, and if no takers of that class, then to deserving students at the University of Louisville, for a period of twenty-one years after the life of John H. Isert, Jr.; at that time, the trust will become void and the remaining corpus and income will be distributed to the heirs-at-law of Isabel Isert Gray in accordance with the laws of descent and distribution.

In effect, although the trial court had ruled that the trust in question was void, it construed the trust to be voidable under KRS 381.216 and therefore reformable.

On August 5, 1985, a hearing was held to provide all parties involved an opportunity to address the proposed order being considered by the trial court. At such hearing were the Isert heirs, Stephenson, as well as counsel for the University of Louisville. All parties were represented by counsel. At this hearing, the appellees argued that the *cy pres* portion of the statute was not intended to apply to a trust which was void on its face. Nevertheless, on December 4, 1985, the trial court entered as its order the order it had considered in August of 1985. The appellees filed a motion to alter or amend the order pursuant to CR 59.05. Stephenson also filed a motion to alter or amend the order on December 6th. No motion to alter or amend was filed by the University of Louisville. A hearing was scheduled to be held on such motions on March 21, 1986.

Four days prior to the hearing date, on March 17, 1986, new counsel for the University of Louisville requested of the trial court leave to raise an issue not previously raised: that is whether lives other than that of John H. Isert, Jr. should be used as the measuring lives for determining the duration of the trust. Although the appellees objected to such a request, the trial court allowed the appellant to appear and to present such an argument. It denied all motions to alter or amend its order of December 4, 1985. It is from such order that the appellant and cross-appellants now appeal.

■ Initially, the appellees argue that the appeal filed by the appellant should be dismissed in that the issues raised by it were not timely raised before the trial court. Specifically, they seem to argue that inasmuch as the appellant failed to file a motion to alter or amend the order within ten days of its entry on December 4, 1985, they, in effect, failed to file a valid notice of appeal pursuant to CR 73.02. Notwithstanding such argument, we find no merit to it.

Under the provisions of CR 73.02(1)(e), the running of the time for an appeal is stayed by "a timely motion made pursuant to any of the rules hereinafter enumerated," including the "granting or denying a motion under Rule 59 to alter, amend or vacate the judgment. . . ." The language

of CR 73.02(1)(e) simply states that the running of the time for an appeal is stayed or terminated by the timely filing of a motion to alter, amend or vacate under CR 59. It does *not* say that the motion to alter, amend or vacate must be filed by all of the parties involved if more than one party is involved. The rule simply holds that the running of the time will be terminated by the filing of "a motion under Rule 59...."

Here, the trial court entered its order on December 4, 1985. The appellees, as well as Stephenson, filed separate motions to alter or amend the judgment within the ten-day time limit set forth in CR 59.05. As a result, the running of the time for filing the notice of appeal was suspended. The fact that the appellant did nothing at this point did not affect the suspension of the running of the time. Once the trial court ruled on the respective motions of all of the parties—including the motion filed by the appellant to alter or amend the trial court's order—the time for the filing of a notice of appeal began to run. Consequently, the appeal and cross-appeal filed by all of the parties were timely filed.

■ Without belaboring the point, we find, from a review of the record below, that the issue raised by the appellant in the hearing before the trial court on March 21, 1986—the issue of whether additional lives-in-being should be utilized for the purposes of determining the duration of the trust under KRS 381.216—was an issue presented to the trial court and thus can be raised on appeal. It was properly preserved. Stated simply, the trial court, in allowing the appellant to present its argument in such hearing, prevented any of the other parties from being prejudiced. Given the fact that the issue raised by the appellant was presented to the trial court, we find that it was an issue properly preserved for appellate review.

■ Substantively, the appellees argue that the trial court erred, as a matter of law, in reforming the trust under the language of KRS 381.216 in that there is no provision in the will itself for the ultimate vesting of the trust corpus. To the contrary, the appellant argues that given the language of the statute, reformation is mandatory. In effect, it argues that the statute mandates the reformation of any interest which clearly violates the rule against perpetuities, notwithstanding the fact that the vesting of the trust assets would be remote in the future. The language of KRS 381.215 and KRS 381.216 are as follows:

KRS 381.215 Adoption of common-law rule against perpetuities.—No interest in real or personal property shall be good unless it must vest, if at all, not later than twenty-one (21) years after some life in being at the creation of the interest. It is the purpose of this section to enact the common-law rule against perpetuities, except as hereinafter modified by KRS 381.215 to 381.223.

KRS 381.216 Wait-and-see doctrine—Reformation.—In determining whether an interest would violate the rule against perpetuities the period of perpetuities shall be measured by actual rather than possible events; Provided, however, the period shall not be measured by any lives whose continuance does not have a causal relationship to the vesting or failure of the interest. Any interest which would violate said rule as thus modified shall be reformed, within the limits of that rule, to approximate most closely the intention of the creator of the interest.

In construing the language of KRS 381.-216, a threshold question must be asked: can an interest which violates the rule against perpetuities be reformed in such a way that it falls "within the limits of that rule"? If so, such an interest is to be reformed to approximate most closely "the intention of the creator of the interest." Here, the central question is not whether the interest created under the trust of Isabel Isert *must* be reformed but whether it *can* be reformed within the limits of the rule to approximate her intention. Stated differently, the question is whether the *cy pres* language contained within the statute is applicable to the interest created in the will in question.

Since its enactment, effective June 16, 1960, KRS 381.216 has had apparently little judicial construction. Nevertheless, if the argument raised by the appellant is to be accepted, the statute would mandate that any interest created under a trust *must* be reformed regardless of the fact that there may be no provision for the vesting or non-vesting of the trust corpus. Although the statute was enacted to allow a court to carry out the intention of a testator when such a testator has violated the specific technical language of the rule against perpetuities, it does not follow that all violations of the rule against perpetuities—especially violations relating to the ultimate vesting of a corpus—will be cured or remedied by the application of it.

In *Arnold v. Barber*, Ky., 472 S.W.2d 466 (1971), the court, in commenting upon the need to look to the intention of the testator as gleaned from the will itself, stated, in quoting from *Reno's Executor v. Luckett*, Ky., 298 S.W.2d 674 (1956):

"We have many times written that in arriving at the intention of testator in construing wills the question in each case is not, 'What did testator mean or intend to say?' but, 'What is meant by what he said?'"

*Arnold, supra* at 466.

Here, the question is not so much what did the testator mean or intend to say by the language of the will, but what is meant by what she did say. Here, there is no provision for the ultimate vesting of the trust corpus. On the contrary, although the testator specified how the income from the scholarship was to be used with respect to scholarships for her descendants or for "any deserving students," there is no provision as to the ultimate vesting of the corpus in any of her descendants. Furthermore, there is a question as to what is meant by "any deserving students." The distinction between remoteness in the vesting of an interest and *no* vesting at all has been recognized by at least one scholar as a critical distinction. *See* Dukeminier, *Perpetuities: The Measuring Lives*, 85 Colum. L.Rev. 1648 (1985).

Although the appellant argues that the trust corpus will vest "when there are no more descendants of Isert, Jr. and Stephan or qualified students," the will itself does not so state. There is no discussion in the will as to what is to happen when there are no descendants or deserving students available for scholarships. The question before this Court is if the appellant's argument is to be accepted, with whom will the trust vest: the University of Louisville, the Isert heirs? It is interesting that although the testator made specific provisions as to how the income from the trust was to be invested, there is no language expressing her intention as to the ultimate disposition of the principal. Although she allowed for the possibility that there may have been no descendants of either John H. Isert, III or Harriet Isert Johnson, she simply stated that in that event "the entire principal of the trust shall go into the scholarship fund at the University of Louisville." She did not express her intention as to how the fund would be ultimately disposed of.

In *Farmers Nat. Bank of Cynthiana v. McKenney*, Ky., 264 S.W.2d 881 (1954), the court, in voiding a provision of a trust contained in a will, held that in that there was no possibility of determining the testator's intention concerning the ultimate disposition of the trust assets, the trust was void for uncertainty. In *McKenney, supra*, the will in question attempted to direct the payment of income from the trust to specific parties. Item IV of the will provided that the income was to be paid in equal parts to the testator's three half sisters as long as they lived and upon the death of each of them her share should be paid to "her heirs, if any, as long as the law allows." *Id.* at 881. The will further provided as follows:

"In the event of the death of any of the above named beneficiaries, or their heirs, before the termination of this trust, the share of the one or ones so dying shall revert to my estate, the income to be paid to the survivors or survivor or their heirs."

*McKenney, supra* at 881.

In construing the will, the court questioned whether the testator ever contem-

plated how the trust assets would finally be terminated and in whom they would vest. In voiding its provisions, it held as follows:

> We have carefully studied this part of the will and in our opinion it contains so many alternate and uncertain provisions that we are at a loss to determine from the language used what was the true intent of the testator. If he had disposed of the corpus of the trust or devised and bequeathed the fee in his property to some ultimate beneficiary, we may have had some key to his intention. To us it appears that this will has attempted to create so many different estates in the income from the trust that a serious legal problem would develop every time a death or birth occurred in the families of his three half sisters. No court could finally determine at the present time what rights will accrue or be extinguished under Item IV of the will.

*McKenney, supra* at 882.

Although the decision of the court in *McKenney* was prior to the enactment of KRS 381.216, we do not find any conflict between the two. Clearly, the statute was designed to reform a trust instrument which was technically deficient in going beyond the twenty-one years of a life-in-be-

ing. Again, we find that the key to the statute is the language that an interest violating the rule against perpetuities shall be reformed "within the limits of that rule." Here, the interest which the testator attempted to create could never exist within the limits of that rule in that there was no ultimate vesting of the trust corpus. Although the trial court's reformation of the trust was well-guided, we find that it went beyond the language expressed by the testator. As such, the order of the trial court of December 4, 1985 is reversed with directions to enter a new order terminating the trust in question and distributing the assets involved to Mrs. Gray's heirs-at-law. We affirm so much of the opinion entitling appellant to raise the issue of measuring lives at the March 21, 1986 hearing. The motions to dismiss the appeal of the University of Louisville are hereby denied.

All concur.