Lawrence T. JOHNSON (Executor of Frank Johnson Estate); Lawrence T. Johnson; Kerry S. Britt; Lisa R. Morgan; Dennis S. Britt; Sonja L. Britt; John B. Johnson, II; and Regina Johnson Britt, Movants,

v.

Margaret Johanne SMITH; Suzanne Smith; Sloan Smith; Ian Smith; Pamela Smith Dye; Jack Daniels Smith; and Johan C. Smith, Respondents.

Nos. 93–CA–110, 93–SC–665–DG.

Supreme Court of Kentucky

Oct. 27, 1994.

Diana L. Skaggs, Carey, Rosenbaum, Niemi, Skaggs & McKinley, Louisville, for movant, Lawrence T. Johnson, Exec., et al.

Homer Parrent, III, Parrent, Vish & Smither, Wallace Spalding, Jr., Wallace Spalding, III, Louisville, for movant, John B. Johnson, II.

Stanley W. Whetzel, Jr., Maria A. Fernandez, Taustine, Post, Sotsky, Berman, Fineman & Kohn, Louisville, for movant, Regina Britt.

Joseph E. Stopher, Robert E. Stopher, Boehl, Stopher & Graves, Louisville, for respondents.

LEIBSON, Justice.

This case is a problem of appellate procedure generated in the aftermath of a declaratory judgment action. The question is whether the notices of appeal filed by the movants were filed prematurely and therefore defectively, and, if so, whether such defect renders their appeals a nullity.

John B. Johnson, II and Regina Johnson Britt, two of a number of beneficiaries of an *inter vivos* trust executed by John B. Johnson, now deceased, filed a declaratory judgment action in Jefferson Circuit Court, seeking cancellation or reformation of a clause in the trust instrument on grounds this clause was executed "through mistake and misapprehension." The trust instrument provided that the corpus, which eventually exceeded $7.2 million, was to be divided and distributed in differing, specified percentages among the grantor's three children, a daughter and two sons, and their issue. The trust corpus was divided 50% to daughter, Margaret, 30% to son, Thomas, and 20% to son, Frank. Regina Britt is a daughter of the grantor's son Frank, and John Johnson, II, is a son of the grantor's son Thomas. The declaratory judgment action put in issue the "tax allocation provision" in the trust which specified that "all ... estate and inheritance taxes incurred by the Grantor's death" would be paid from the portions of the trust set up for sons Frank and Thomas and their issue. The result is the trust set up for daughter Margaret and her issue, from which no taxes are to be paid, will receive nearly $3.5 million of the net estate (96.7%), while Thomas' trust would receive about $70,000 (1.9%), and Frank's trust about $50,000 (1.4%) of the trust estate.

The declaratory judgment action was filed against the trustee, Liberty National Bank and Trust Co., and daughter Margaret and her children, the persons benefiting from the tax allocation provision. Those beneficiaries of the separate trusts for sons Frank and Thomas and their issue aside from the two named plaintiffs were named as additional defendants. Some (but not all) of these beneficiaries named as defendants then joined in questioning the tax allocation clause.

By counterclaim against the plaintiffs and cross-claims against other beneficiaries who joined in challenging the validity of the tax allocation clause, trustee Liberty Bank and daughter Margaret and her issue then put in issue a further clause in the trust instrument, called the "*in terrorem* clause." This clause, by its terms, divests the trust interest of "any beneficiary hereunder [who] shall contest the validity of this Trust Agreement or any provision thereof, or [who] shall institute or join (except as a party defendant) any proceeding to contest the validity of this Trust Agreement or to prevent any provision hereof from being carried out in accordance with its terms...." This forfeiture provision is referred to as an "*in terrorem*" clause because its purpose is to strike fear into the heart of a beneficiary who might wish to

consider contesting the provisions of the trust.

On April 15, 1992, the trial court disposed of the attack on the tax allocation clause by summary judgment in favor of the defendants, trustee Liberty Bank and daughter Margaret and her issue, reciting that this was a "final and appealable order, there being no just cause for delay." This ruling was then appealed to the Kentucky Court of Appeals, which affirmed in an opinion rendered May 6, 1994 (Case No. 92–CA–1283). This Court of Appeals opinion is now final. Discretionary review was denied August 24, 1994.

In this same April 15, 1992 order making a final disposition by summary judgment of the tax allocation clause issue, the trial court denied summary judgment as to the *in terrorem* clause. After a bench trial in September, the trial court disposed of it in a final order entered December 22, 1992. This order upheld applying the *in terrorem* clause to this case. In three separate paragraphs of a single order the trial court held: (1) "Plaintiffs, Regina Britt and John B. Johnson, II, have forfeited their trust entitlement"; (2) "Defendants, Frank Johnson, Larry Johnson, the four children of Regina Britt, Thomas Johnson, Sr., and Thomas Johnson, Jr., have forfeited their trust entitlement"; and (3) "the children of Thomas Johnson, Jr. and John Johnson, II, [who did not contest the tax allocation clause] are the true recipients of any Trust C entitlement." This order forfeited the entitlement of those beneficiaries who contested the tax allocation clause, whether as original plaintiffs or as original defendants filing cross-claims, and passed the trust corpus to Margaret Smith and her issue and to the portion of the issue of brother Thomas who did not contest the tax allocation clause.

The present procedural dilemma arises because the attorney representing one of the trust beneficiaries, son Thomas and two of his issue (but not the rest), filed a timely CR 59 motion seeking both a new trial and an order to alter or amend the judgment. Such a motion must be "served not later than ten days after entry of the final judgment" (CR 59.05). CR 73.02(1)(e) specifies that the thirty day time limit in CR 73.02(1)(a) within which to file a notice of appeal is "terminated by a timely motion pursuant to" Rule 59 and "the full time for appeal ... commences to run upon entry of" an order "granting or denying" the motion. CR 73.02(1)(e). The parties filing the Rule 59 motion later, when it was denied, filed a timely appeal (93–CA–0577) and their appeal was consolidated with the previous appeal of the tax allocation clause (92–CA–1283) which was still pending. In the same Court of Appeals' opinion rendered May 6, 1994 (discussed *supra*) affirming the trial court's ruling on the tax allocation clause, the Court of Appeals also addressed and reversed the trial court's ruling on the *in terrorem* clause, "conclud[ing] the circuit court misapplied the forfeiture clause as to these appellants." "These appellants" did not include the movants in the present case. The movants in the present case already had appealed separately and severally from the trial court's final order entered December 22, 1992 (93–CA–110 and 93–CA–172), rather than seeking post-judgment relief. Their appeals had been consolidated with the appeals decided on May 6, 1994, but had been dismissed by the Court of Appeals for procedural default before reaching the merits.

The trust beneficiaries (the movants in the present case) whose interest was ordered forfeited because of the *in terrorem* clause in the trial court's final order of December 22, 1992 who elected to appeal forthwith rather than to pursue a post-judgment motion under CR 59 are: (1) brother Frank (now deceased, through his estate) and some of his heirs, who filed a notice of appeal on January 11, 1993; and (2) grandchildren, Regina Britt and John Johnson, II (plaintiffs in the original declaratory judgment action) who filed a notice of appeal on January 19, 1993. These two notices of appeal were filed within thirty days of the final judgment entered against these parties on December 22, 1992, as provided for by CR 73.02(1)(a), but were premature *if,* when a CR 59 motion was filed by *other* parties (on December 29, 1992), time for filing notices of appeal was suspended for *all* parties and not just those several parties who filed the CR 59 motion. The trial court

overruled the CR 59 motion of February 12, 1993, and movants filed no new notices of appeal after this occurred, relying on their previously filed notices of appeal to perfect their appeals. These appeals filed by the movants were consolidated with the separate appeals filed later in time by those beneficiaries who had pursued a CR 59 motion.

After these cases had been consolidated, briefed and were under submission, the appellees, trustee Liberty Bank and daughter Margaret and her issue, moved to dismiss movants' appeals of the *in terrorem* clause in 93–CA–110 and 93–CA–172, wherein no CR 59 motion had been made. The grounds were that the CR 59 motion made in the trial court by other beneficiaries suspended finality of the order of December 22, 1992 as to *all* parties, rendering a nullity the two notices of appeal filed in the interim before the trial court denied CR 59 relief on February 12, 1993. The argument was that the movants needed to file new notices within the thirty day period commencing with the order of February 12, 1993 overruling the CR 59 motion.

The Court of Appeals sustained the motions to dismiss these appeals, stating that the Rule 59 "motion converted the final judgment to an interlocutory judgment until it was adjudicated," that "[a]ppellants' notices of appeal were filed during the pendency of that [CR 59] motion while the finality of the judgment was temporarily suspended," and that "[c]onsequently, these appeals were prematurely taken and this Court [of Appeals] has no jurisdiction to review them." We granted discretionary review, and for reasons that will be stated, we reverse.

There are three problems raised by the Court of Appeals' order of dismissal.

1) The first is whether the final order entered December 22, 1992 was "converted ... to an interlocutory judgment" (Court of Appeals opinion, *supra*) by the CR 59 motion as to these movants who accepted finality as well as those separate, several beneficiaries making a post-judgment motion.

2) Should a *premature* notice of appeal be treated the same as a *tardy* notice subject to automatic dismissal under CR 73.02(2), or,

instead treated as other procedural defects which, in the absence of prejudice to the appellee do not require dismissal? In federal appellate practice a *premature* notice of appeal (absent prejudice), in reasonable circumstances, is deemed simply to relate forward and become effective on the date the trial court tenders its final judgment. See *FirsTier Mtge. v. Investors Mortgage Ins. Co.*, 498 U.S. 269, 111 S.Ct. 648, 112 L.Ed.2d 743 (1991) (discussed *infra*). Should the same rule be applied in construing our Kentucky rules of appellate practice?

3) Should filing premature notices of appeal be subject to a waiver of this defect where, as here, the appellees join issue on the substantive questions raised by the appeal by filing briefs and the issue of procedural default is first raised only after the case was ready to be decided on its merits?

We start by investigating the Court of Appeals' premise that these appeals "were prematurely taken."

■ The underlying premise is that the CR 59 "motion converted the final judgment to an interlocutory judgment until it was adjudicated" not only as to the party making the CR 59 motion but also as to other parties who made no post-judgment motion, whose interest would not be affected by the outcome of the motion, and who would be bound by the judgment entered December 22, 1992 regardless of the outcome of the post-judgment motion unless they appealed.

Under CR 59.04 and 59.05 the court has control over its judgment with a right to order a new trial, or alter, amend or vacate the judgment, either on motion or *sua sponte*, for ten days after entry of judgment, but not thereafter. This time limit is extended by a motion filed within the time limit, but only as to parties involved in the post-judgment motion. Without regard to disposition of the CR 59 motion made by other trust beneficiaries, finality had attached to the judgment against these movants. The trial court had lost the right to amend the judgment as to them, *sua sponte* or otherwise. Why then was it not reasonable for them to interpret CR 73.02(1)(a) as requiring a notice of appeal within thirty days from the date of

the judgment which was final as to them? Why then was it unreasonable for them to construe CR 73.02(1)(e), suspending "the running of the time for appeal" upon making a CR 59 motion as not applicable to their particular circumstances? CR 73.02(1)(e) does not specifically require a different construction because it is unclear whether, when it refers to "[t]he running of the time for appeal" as suspended by "a timely motion" pursuant to CR 59, it means suspended as to the parties affected by the motion, or as to all parties whether or not affected by the outcome of the motion. The only apparent reason for suspending the right of appeal for unaffected parties, for making CR 73.02(1)(e) applicable to such parties as well as to other parties who are affected by the CR 59 motion, is one of judicial economy: piecemeal appeals are inefficient. But we obtain the same efficiency simply by abating an appeal when needed in the service of judicial economy, and consolidating appeals when appropriate to do so.

While the delay that would be occasioned by requiring parties not affected by a post-judgment motion to await its disposition before appealing might seem, superficially, a matter of little consequence, this would be true only in those cases where the post-trial motions made by others are overruled. If a new trial is granted, such delay becomes a matter of monumental importance because the party seeking to appeal must now await the outcome of a case in which it has no stake. Further, in a case where there are plaintiffs with separate, several judgments against a defendant, or a single plaintiff with separate, several judgments against multiple defendants, should the finality of claims unaffected by a post-judgment motion be suspended from enforcement or appeal because of unrelated post-judgment motions? If one of several defendants is granted a new trial, should the right to enforce the judgment against other defendants no longer involved be foreclosed until judgment after the new trial is final? On balance, while the Court of Appeals' approach may provide judicial efficiency for the appellate court, it does so at a significant cost to the constitutional right of appeal of the litigant who must await the final outcome of a CR 59 motion by unrelated parties. This could include a substantial delay in awaiting the outcome of a new trial if the motion is sustained.

Respondents argue that *University of Louisville v. Isert*, Ky.App., 742 S.W.2d 571 (1987) is dispositive of this issue. The facts in *Isert* are not clear from the opinion, but appear to be inapposite. The case seemingly involves the opposite side of the present issue, but with this issue opposite sides are not equal. In *Isert*, the appellants did not file a notice of appeal before the trial court ruled on pending post-judgment CR 59 motions filed by other parties; they filed no notice until after the trial court decided such motions. *Isert* held that "the running of the time for filing the notice of appeal was suspended" until post-judgment motions made by others were ruled on, so the appellant had not lost his right to appeal by waiting to file his notice of appeal. *Id.* at 574.

It is not clear in *Isert*, as it is here, that the appellants were unaffected by the post-judgment motion, regardless of outcome. The nature of the post-judgment motion made by other parties in *Isert* is unstated. Nevertheless, without further construing *Isert*, we find it inapposite, because the question in *Isert* was whether the notice of appeal was too late, whereas here the question is whether it was too early. Whereas an interpretation of CR 73.02 *extending* a time for filing a notice of appeal to thirty days after the trial court rules on post-judgment motions, regardless of whether the party appealing is involved in the post-judgment motion, may be sound judicial policy, the opposite is not true.

■ While CR 73.02(2) plainly states that "failure of a party to file timely a notice of appeal" shall result in automatic dismissal, nevertheless it has been necessary to construe what is a "timely notice of appeal" on a case-by-case basis, and we have reached differing results as to whether a claimed defect in the notice of appeal renders it untimely and automatically fatal to invoking appellate jurisdiction, depending on the character of the defect. For example, in *City of Devondale v. Stallings*, Ky., 795 S.W.2d 954 (1990), the Majority classified failure to name "two

indispensable parties to the lawsuit" as failure to "timely" file a notice of appeal, which could not be rectified by amendment. The logic in this is that such parties, having *not* been timely notified of the appellant's intent to appeal, had a right to consider the judgment final. On the other hand, in the leading case on the subject, *Ready v. Jamison,* Ky., 705 S.W.2d 479 (1986), we held that defects in the notices of appeal consisting of "fail[ure] to properly designate a final judgment" (the appellants in the three cases had appealed from orders overruling post-judgment motions rather than from the judgment) did not require automatic dismissal. As here, the notices of appeal, albeit defective, were sufficient to put the appellees on notice of the intent to appeal. In *Ready* we stated:

> "While our court continues to have a compelling interest in maintaining an orderly appellate process, the penalty for breach of a rule should have a reasonable relationship to the harm caused. Likewise the sanction imposed should bear some reasonable relationship to the seriousness of the defect.
>
> . . . .
>
> With this new policy we seek to recognize, to reconcile and to further three significant objectives of appellate practice: achieving an orderly appellate process, deciding cases on the merits, and seeing to it that litigants do not needlessly suffer the loss of their constitutional right to appeal." *Id.* at 482.

Consistent with the policy announced in *Ready,* there is no reason why, even assuming these appeals should be deemed "premature," this should require dismissal. Whether we decide time runs from date of judgment, or from overruling of post-judgment motions made by other parties, the notices of appeal filed here put appellees on notice of the intent to appeal *before* expiration of the thirty day time limit in CR 73.02(1)(a), and thus served the essential purpose of the rule. A rule of relation forward, as in the federal courts, invoking appellate jurisdiction as of the time post-judgment motions are ruled on, is adequate to protect the needs of the appellees.

The federal courts have long construed a notice of appeal filed prematurely as relating forward and filed after entry of final judgment. See *Firchau v. Diamond National Corp.,* 345 F.2d 269 (C.A. 9 1965) and *Ruby v. Secretary of Navy,* 365 F.2d 385 (C.A. 9 1966), as cited and applied in *FirsTier Mtge. v. Investors Ins. Co.,* 498 U.S. 269, 275, 111 S.Ct. 648, 652, 112 L.Ed.2d 743 (1991). As stated in *FirsTier Mtge.,* the policy of construing a premature notice of appeal to relate forward, which was formerly just a rule of construction, is now codified in the Federal Rules of Appellate Procedure, FRAP 4(a)(2). The U.S. Supreme Court construes the federal rule as follows:

> "A premature notice of appeal does not ripen until judgment is entered. Once judgment is entered, the Rule treats the premature notice of appeal as 'filed after such entry.' ... it [FRAP 4(a)(2) ] permits a premature notice of appeal ... to relate forward to judgment and serve as an effective notice of appeal *from the final judgment.*" 498 U.S. at 275, 111 S.Ct. at 652. Emphasis original.

Contrary to the Court of Appeals' opinion, filing a notice of appeal in compliance with CR 73.02 is not a matter of jurisdiction, but only of procedure. Our rule does not *create* jurisdiction, but only prescribes "the method by which the jurisdiction of an appellate court is invoked." *Manly v. Manly,* Ky., 669 S.W.2d 537, 539 (1984), overruled as to "the policy of strict compliance" in *Ready v. Jamison, supra;* see *Foxworthy v. Norstam Veneers, Inc.,* Ky., 816 S.W.2d 907, 910 (1991).

> "Jurisdiction derives from the judicial article of the Kentucky Constitution, Sec. 109–124. The rule in question is a court made rule pursuant to the Kentucky Constitution, Sec. 116...."
>
> "We prescribe the rules and we interpret the rules. We decide whether and when to require strict compliance. We must accept the responsibility for the decision." *Manly v. Manly,* 669 S.W.2d at 540, Leibson, J., dissenting.

To be precise, losing litigants are constitutionally vested with a right of appeal and appellate courts are constitutionally vested

with jurisdiction. Strictly speaking, the notice of appeal is *not* jurisdictional. It is a procedural device prescribed by the rules of the court by which a litigant may invoke the exercise of the inherent jurisdiction of the court as constitutionally delegated. This is why CR 73.02(2) describes automatic dismissal as the penalty for failure of a party to file a timely notice of appeal, but not as a lack of jurisdiction.

■ If it were otherwise, the rules could not be changed except by constitutional amendment. This Court has the power to deny or dismiss an appeal if the rules are not followed, based on its own rules, but no power to create or deny jurisdiction. The battle between strict compliance with the rules of appellate practice to avoid dismissal (*Foremost Ins. Co. v. Shepard*, Ky., 588 S.W.2d 468 (1979) and *Manly v. Manly*, *supra* ), and substantial compliance (*Ready v. Jamison*, *supra* and *Foxworthy v. Norstam Veneers, Inc.*, *supra* ) is now over. Excepting for tardy appeals and the naming of indispensable parties, we follow a rule of substantial compliance.

A rule requiring automatic dismissal for a tardy appeal in civil cases is necessary to provide finality to the trial court's judgment so that the litigant prevailing at the trial level can then execute on the judgment or otherwise enforce the terms of a final order. But the reasons for finality that provide the underpinning for mandating automatic dismissal of a *tardy* notice of appeal do not adhere to a *premature* notice of appeal, at least to a notice which is "premature" only because other parties severally affected by the judgment have filed post-judgment motions suspending finality as to these other parties. On the contrary, for the same reasons that we permit a prevailing party to enforce a judgment ten days after entry as to those parties whose rights and obligations are fixed by the judgment, unaffected by a post-judgment motion made by unrelated parties, notice of appeal from a party who has not filed a post-judgment motion puts the prevailing party on notice of the intent to appeal even if others have filed post-judgment motions.

We deem the federal approach adopted in the *FirsTier Mtge.* case, *supra*, appropriate for present purposes. The U.S. Supreme Court states the premature notice of appeal protects the litigant who "reasonably but mistakenly believes [the order or judgment entered against him] to be a final judgment, while failing to file a notice of appeal from the actual final judgment." 498 U.S. at 276, 111 S.Ct. at 652–53.[1] This rule permits a premature notice to be effective to invoke the jurisdiction of the appellate court upon final judgment where, as here, the circumstances suggest filing a notice of appeal would not be unreasonable. The U.S. Supreme Court states:

> "In our view, Rule 4(a)(2) permits a notice of appeal from a nonfinal decision to operate as a notice of appeal from the final judgment only when a district court announces a decision that *would be* appealable if immediately followed by the entry of judgment. In these instances, a litigant's confusion is understandable, and permitting the notice of appeal to become effective when judgment is entered does not catch the appellee by surprise. Little would be accomplished by prohibiting the court of appeals from reaching the merits of such an appeal." *Id.* at 276, 111 S.Ct. at 653. (Emphasis original.)

The question here is whether the appellants *must* await the outcome of post-judgment motions made by other litigants which do not affect rights and obligations fixed by the judgment as to the parties seeking to appeal. We hold that these movants' notices of appeal were not fatally defective simply because they were filed before the trial court ruled on a post-judgment motion made by other parties. The notices of appeal filed forthwith relate forward to the time when final judgment was entered disposing of post-judgment motions made by others. There is no rule, and no sound judicial policy, forbidding such construction.

Because we have decided the rules should be construed to permit the notices of appeal filed by these movants to relate forward to the time when the CR 59 motion made by other parties was decided, we need not de-

---

1. It further states this rule does not permit "a notice of appeal from a clearly interlocutory de- cision—such as a discovery ruling or a sanction order." *Id.*

cide in this case the more difficult question as to whether these movants were actually *required* to file their notices of appeal within thirty days from the judgment of December 22, 1992. We leave this question to the consideration of this Court's Civil Rules Committee and to the rule-making process. In the interim, the Court of Appeals in *Isert* held an appellant who makes no post-judgment motion *may* await the outcome of post-judgment motions made by other parties before filing a notice of appeal.

Further, the approach we have taken in this case makes it unnecessary to consider whether we should apply a waiver principle because the respondents did not move for dismissal until after the case had been briefed on the merits and was under submission.

For the reasons stated we reverse the decision of the Court of Appeals dismissing this appeal. We remand the appeal in 93–CA–110–MR, *Lawrence Johnson, Executor of the Estate of Frank B. Johnson, et al. v. Margaret Johanne Smith, et al.*, to the Court of Appeals for further consideration on its merits, recognizing that arguments on the merits regarding the *in terrorem* clause similar to those made by the movants in this case have already been sustained by the Court of Appeals in the cases decided May 6, 1994, 93–CA–0577, *Thomas D. Johnson, etc., et al. v. Liberty National Bank, etc., et al.* (see, *supra*). That Court of Appeals' decision holds the *in terrorem* clause does not apply to parties originally named as defendants in the declaratory judgment action, just as some of the movants here were originally named as parties' defendant.

We dismiss the appeal in 93–CA–172–MR, *John B. Johnson, II and Regina Johnson Britt*, because these parties have advised us in open court they wish to dismiss their case.

STEPHENS, C.J. and LEIBSON, REYNOLDS, SPAIN and STUMBO, JJ., concur.

LAMBERT and WINTERSHEIMER, JJ., concur in results only.