Stephen STINSON, Appellant,

v.

Tracy STINSON, Appellee.

No. 2011–CA–001312–MR.

Court of Appeals of Kentucky.

Oct. 5, 2012.

Karen Shuff Maurer, Assistant Public Advocate, Frankfort, KY, for appellant.

No Brief for appellee.

Before CAPERTON, LAMBERT, and VANMETER, JUDGES.

## OPINION

LAMBERT, Judge:

Stephen Ray Stinson appeals from the order of the Barren Family Court holding him in contempt of an amended domestic violence order (DVO) for violating the no contact or communication provision. He contends that the family court erred in entering the original DVO in 2009 and that he could not be found in contempt of the amended DVO because he had never been served with it. Because we agree that a party may not be held in contempt for violating an order with which he was not served, we must reverse the contempt order.

Stephen and Tracy Lynn Stinson were formerly married and are the parents of two children. A dissolution action was filed in Barren County in 2009, and a decree dissolving the marriage was entered in November 2009. In September 2009, Tracy filed a petition seeking a domestic violence order, citing Stephen's telephone calls and text messages as well as his threats to come to her home and take the love out of her life. She related Stephen's attempt the prior month to run her off of the Cumberland Parkway, which ended in Stephen wrecking his automobile following a police chase. Tracy also stated that she feared for her children's safety and that she was concerned about what Stephen was capable of doing to her or their children. The court entered an emergency protection order (EPO) restraining Stephen from committing further acts of domestic violence or from any contact with Tracy, and scheduled a hearing for the following month.

Following a hearing on October 5, 2009, the court entered a DVO restraining Stephen from having any contact with Tracy, with the exception of judicial proceedings, visitation, or court orders. The DVO was to remain effective until October 5, 2010. In addition, the court required Stephen to complete domestic violence counseling through Turning Point as well as an alcohol and drug education program by July 1, 2010, and to provide the court with certificates of completion. By separate rule entered the same day, the court ordered Stephen to appear before it on August 17, 2010, if he had not yet filed the certificates of completion as ordered in the DVO. Stephen did not need to appear if he had filed the certificates by July 1, 2010. Stephen did not file the required certificates of completion.

The matter came before the court for review on August 17, 2010, pursuant to the order entered October 5, 2009. Neither Stephen nor Tracy appeared in court that day. Because Stephen failed to comply with the terms of the DVO, the court held him in contempt and sentenced him to ten days in jail, which was suspended on the condition that Stephen file the required certifications of completion by April 1, 2011. The court set the matter for review on May 10, 2011, for imposition of the sentence if the certificates had not been filed. By separate order, the court entered an amended DVO to provide for the new date for completion of the pro-

grams. The court also extended the effectiveness of the amended DVO for two more years until October 5, 2012. Both of these orders were signed on August 17, 2010, and were entered the following day. On August 19, 2010, the court entered an amended DVO form incorporating its prior orders. The record reflects that two attempts to serve Stephen at his usual address were returned as undeliverable.

On February 25, 2011, Tracy filed a domestic violence show cause order after she had received a letter from Stephen earlier that month which he had mailed to her parents' house. She stated that the letter contained threats of harassment and of Stephen breaking the existing DVO. Tracy also stated that she had been receiving calls from him while he was in jail and that she had subsequently blocked his telephone calls. The court issued a summons, and both parties appeared, without counsel, before the court on March 18, 2011. At that time, Tracy stated that she just wanted Stephen to understand that he needed to stop the harassment and move on with his life. She did not want him to go to jail because that would not be good for their children. Stephen stated that he had been released from jail on March 1, 2011, where he was awaiting trial on fleeing and evading charges. Tracy admitted that Stephen had not tried to contact her since being released. Because a contempt finding might result in a jail sentence, the court permitted Stephen to file an affidavit of indigency to determine whether he could afford to hire an attorney. The court found Stephen to be indigent and appointed the DPA to represent him. The court then rescheduled the show cause hearing for a later date.

The court held a show cause hearing on June 24, 2011. Stephen appeared with his appointed counsel. Initially, Stephen argued that because he had not been served with the amended DVO, he could not be found in contempt for violating its terms, specifically arguing that the allegedly contemptuous behavior occurred after the expiration date of the original DVO. Stephen cited to Kentucky Revised Statutes (KRS) 403.735(6), which provides that an order of protection does not become effective or binding until it is served on the respondent or the respondent is notified of its existence and terms. The court denied Stephen's oral motions to vacate the amended DVO or dismiss the domestic violence show cause order, reasoning that the cited statute applied only to the entry of the original DVO. The court then heard testimony from the parties. Stephen admitted to writing and mailing the letter, but stated that he did not intend to harass Tracy and that he did not know the amended DVO was in effect. And as before, Tracy indicated that she did not want Stephen to go to jail.

At the conclusion of the hearing, the court entered a handwritten order. In the order, the court set forth several findings of fact related to the procedural history of the case, including the entry of the original DVO, Stephen's failure to comply with the counseling requirements, the entry of the amended DVO, and the show cause proceedings. The court then found Stephen in contempt of court for violating the terms of the amended DVO and sentenced him to serve ten days in jail, which was suspended on the condition that he purge himself of contempt by complying with the terms of the amended DVO. This appeal follows.[1]

On appeal, Stephen presents two arguments. First, he contends that there was insufficient evidence to support the entry of the original DVO, seeking review under

1. On Stephen's motion, this Court is treating the appeal as a criminal appeal.

the palpable error rule as set forth in Kentucky Rules of Criminal Procedure (RCr) 10.26. Second, he argues that he could not be held in contempt because he was never served with the amended DVO and therefore could not be bound by its terms.[2]

■ For his first argument, Stephen contests the entry of the original DVO in October 2009, arguing that Tracy failed to establish that an act of domestic violence had occurred and may occur again by a preponderance of the evidence. Stephen seeks review of this issue pursuant to the palpable error rule as set forth in RCr 10.26, which provides:

> A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

However, this is not an issue of failing to preserve an issue in an otherwise proper appeal. Rather, Stephen failed to appeal from the entry of the original DVO in 2009 when he had the opportunity to do so.

■ Our rules of procedure specifically and clearly provide that a notice of appeal must be filed within thirty days after notation of service of the judgment or order. CR 73.02(1)(a). "Compliance with the time requirements of CR 73.02 is mandatory[.]" *United Tobacco Warehouse, Inc. v.*

*Southern States Frankfort Co-op., Inc.,* 737 S.W.2d 708, 710 (Ky.App.1987).

The timely filing of a notice of appeal is not jurisdictional, but rather is a matter of procedure. *Johnson v. Smith,* Ky., 885 S.W.2d 944 (1994). Nevertheless, the supreme court squarely held in *Johnson* that the timely filing of a notice of appeal in compliance with CR 73.02 is the method by which the jurisdiction of the appellate court is invoked and that automatic dismissal of an appeal is the penalty for late filing of such a notice. 885 S.W.2d at 950.

*Stewart v. Kentucky Lottery Corp.,* 986 S.W.2d 918, 921 (Ky.App.1998). Here, Stephen did not attempt to contest the propriety of the original DVO until he filed the present appeal in July 2011, close to two years after the entry of the DVO in October 2009. Because he did not timely appeal from the original DVO, Stephen is precluded from contesting the propriety of the original DVO in the present appeal. We shall decline to address this issue any further.

For his second argument, Stephen argues that he was never served with or notified of the amended DVO and therefore cannot be held in contempt for failing to comply with its terms. We agree.

■ In KRS 403.735(6), the General Assembly set forth when an order of protection becomes effective:

> An order of protection issued under the provisions of KRS 403.715 to 403.785 shall become effective and binding on

**2.** Tracy did not file an appellee brief in this matter. Kentucky Rules of Civil Procedure (CR) 76.12(8)(c) permits this Court to impose the following sanctions in such a circumstance:

> If the appellee's brief has not been filed within the time allowed, the court may: (i) accept the appellant's statement of the facts and issues as correct; (ii) reverse the judg-

ment if appellant's brief reasonably appears to sustain such action; or (iii) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case.

We decline to impose any sanctions pursuant to this rule, but shall instead consider the merits of Stephen's appeal.

the respondent at the time of personal service or when the respondent is given notice of the existence and terms of the order by a peace officer or the court, whichever is earlier. After notice of the existence and terms of the order is given to the respondent, a peace officer or the court may enforce the terms of the order, and act immediately upon any violation of the order. After notice of the order, all reasonable efforts shall be made by the peace officer or the court to arrange for personal service of the order upon the respondent.

Based upon the plain language of the statute, an order of protection is not effective until a respondent has been given notice of its entry and terms or is personally served with it. In order to be held in contempt for violating the terms of an order of protection, KRS 403.760(1) directs:

> Violation of the terms or conditions of an order issued under the provisions of KRS 403.740 or 403.750, whether an emergency protective order, or an order following hearing, after service of the order on the respondent, or notice of the order to the respondent, shall constitute contempt of court.

Therefore, before an individual may be held in contempt for violating the terms of an order of protection, he or she must either have been notified of its existence and terms or have been served with it. We specifically disagree with the family court's statement that the notice and service requirements only apply to an original DVO, not an amended one. The notice and service requirements set forth in KRS 403.735 apply to any order of protection issued pursuant to KRS 403.715 through KRS 403.785, and KRS 403.750(3), which falls between those statutes, permits the amendment of a domestic violence order. Accordingly, the notice and service requirements must be satisfied before an amended DVO may become effective, and a respondent may not be held in contempt for violating an amended DVO until it is effective. And until an individual has been served with an amended DVO or notified of its existence and terms, he or she cannot be found to have violated its terms or conditions.

■ Here, the record reflects that Stephen was not successfully served with the amended DVO and accompanying orders prior to his writing and mailing of the letter in February 2011, which occurred after the expiration date of the original DVO. The documentary record contains two returned envelopes containing the orders, both envelopes marked, "RETURN TO SENDER, NO MAIL RECEPTACLE, UNABLE TO FORWARD." There is nothing in the record to establish that Stephen was served with or notified of the amended DVO until the March 2011 court appearance when the family court discussed its entry and terms. Stephen also testified at the show cause hearing that he had not known of the amended DVO at the time he wrote and mailed the letter forming the basis for Tracy's show cause affidavit.

While there is some validity to the family court's statement on the record that Stephen should have been aware of the consequences of failing to comply with the original DVO and that he could have been held in contempt, the rule issued along with the original DVO did not indicate that an extension of the DVO's effectiveness was a possible outcome. Rather, the rule stated that Stephen would have to show cause why he should not be held in contempt for failing to file the necessary certificates of completion by a certain date. Therefore, we must hold that the June 24, 2011, contempt order was improperly entered and must be reversed.

For the foregoing reasons, the contempt order entered by the Barren Family Court on June 24, 2011, is reversed.

ALL CONCUR.