**Edward S. KEARNS, Appellant,**

v.

**Noble AYER, Appellee.**

**No. 87–CA–384–MR.**

Court of Appeals of Kentucky.

March 4, 1988.

James E. Craig, Owensboro, for appellant.

Richard A. Robertson, Robertson & Robertson, Owensboro, for appellee.

Before HOWERTON, C.J., and McDONALD and WILHOIT, JJ.

McDONALD, Judge:

The appellant, Edward S. Kearns has appealed from the judgment of the Daviess Circuit Court which refused to set aside a default judgment in favor of the appellee, Noble Ayer. On July 3, 1983, while flying his plane over western Kentucky, Mr. Kearns, a resident of Arizona, had the misfortune of being forced to make an emergency landing in a cornfield in Daviess County. An adjuster for his insurer arranged for Mr. Ayer, who was doing business in Owensboro as Ayer Flying Service, to recover the airplane and make certain repairs. Ayer eventually sent a bill to Kearns for the repairs. Kearns paid Ayer $250, the amount of the deductible under his aviation insurance policy. He also sent Ayer a copy of his correspondence with the insurer in which he urged the insurer to pay Ayer the sums due. Ayer was not paid for the repairs by either Kearns or his insurer, and on March 28, 1985, commenced this action in the Daviess Circuit Court, seeking $3,274.33 in damages. On April 6, 1985, Kearns was served through the secretary of state's office. He responded to the summons on April 16, 1985, by filing a letter with the clerk. The letter contained Kearns' summary of the events causing his emergency landing, his problems with his insurer and, pertinent to his defense, the following:

> This letter is in response to the summons served on me by mail on April 5, 1985, and is *an answer in my own defense* against Mr. Noble Ayer in the above stated case. [Emphasis added.]

> . . . . .

> Mr. Guild, the insurance company's adjuster, hired Mr. Ayer, and as far as I am concerned assumed full responsibility for Mr. Ayer's bill under the insurance policy.

> . . . . .

> I have already paid my $250 deductible to Mr. Ayer. I feel that Mr. Ayer should be suing the insurance company as they are the ones who made the contract with him.

> . . . . .

Kearns attached to this response his correspondence with the insurer, a copy of the declarations page of his insurance contract and another letter concerning the cause of the aircraft's problems.

Kearns admittedly did not serve a copy of his response on Ayer's attorney. Nevertheless, Ayer's attorney had knowledge of the timely response, it having been filed in the record prior to Ayer's motion for default judgment. According to the trial court's findings the following then occurred:

> On learning before Judgment was entered that the papers had been filed by the Defendant, counsel brought the file to the Court and expressed the opinion that the matter filed by the Defendant did not constitute an 'appearance.' The Court examined the papers, and was of the same opinion, whereupon the Judgment by default was entered.

Thus, although Kearns had filed an answer, albeit rudimentary, and was not in default, the trial court nevertheless entered its judgment against the nonresident, *pro se* defendant on April 23, 1985, reciting there that he "has made no defense or response." This was accomplished all without any notice to Kearns.

Kearns' airplane was sold by the sheriff on June 7, 1985. The record does not indicate when Kearns first learned of the default judgment, but he appeared in the trial judge's chambers in July, 1985. He was advised by the court to seek legal advice. That he did and, on July 3, 1986, filed his motion to vacate the default judgment based on Ayer's failure to give him notice of the motion as required by CR 55.01.[1]

 In the trial court's ruling on the motion as follows, it justified denying relief to Kearns by holding that the documents he filed in response to the complaint did not constitute an "appearance" as a matter of law:

> Had the Defendant in this case merely denied the complaint or stated words to

the effect that he did not owe the claim, then there would be no question. The Court could not reach the question of a meritorious defense. But since he spelled out a 'defense' clearly not recognized by law it would be a vain, even useless, gesture for the Court to hold he made an appearance. If it were otherwise, then the law would be as much at odds with reason and common sense as Mr. Bumble imagined in Dickens' famous novel.

With due respect for the trial court's eloquence, a motion for default judgment is not a proper vehicle to test the legal sufficiency of an otherwise timely response. The manner in which the case proceeded to judgment is flagrantly inconsistent with recognized notions of fairness and due process. Application of the procedural safeguards established in our civil rules is neither "vain" nor "useless."

The essence of the documents submitted by Kearns was that he was not responsible for paying Ayer for the repairs made to the plane. He did not deny that Ayer made the repairs or that Ayer was entitled to payment; but, in clear words, he denied that *he* was responsible for the debt. The answer as such meets the test articulated in *Smith v. Gadd*, Ky., 280 S.W.2d 495, 498 (1955), which is:

> whether or not he [the defendant] has so participated in the action as to *indicate an intention to defend.* There must be some act which would signify that the defendant is *contesting liability* rather than admitting it, and therefore would be likely to contest the motion for judgment if given notice. [Emphases added.]

*See also Hankins v. Cooper*, Ky.App., 551 S.W.2d 584 (1977).

 The court's entry of the default judgment was not only erroneous but, having been obtained without notice to the appellant, is void as a matter of law. Thus, it had no discretion in ruling on the motion to set the judgment aside. Some courts

---

1. The notice provision of the rule provides: "If the party against whom judgment by default is sought has appeared in the action, he, or if appearing by representative, his representative shall be served with written notice of the application for judgment at least three (3) days prior to the hearing on such application."

have held that the failure to give the required notice is a mere procedural defect which "should not usually be treated as so serious as to render the judgment void." *Winfield Associates, Inc. v. Stonecipher,* 429 F.2d 1087, 1091 (10th Cir.1970). *See also United States v. Manos,* 56 F.R.D. 655 (S.D.Ohio 1972). Nevertheless, our former Court of Appeals, in *Smith v. Gadd, supra* at 497, cited approvingly the case of *Ken–Mar Airpark v. Toth Aircraft & Accessories Co.,* 12 F.R.D. 399, 400 (W.D.Mo.1952), which holds that the lack of notice required by Rule 55(b)(2) of the Federal Rules of Civil Procedure [2] is "a failure of due process and the judgment is a nullity." In the *Hankins* case, *supra,* this Court described the failure to give notice of the application for default judgment as a "fatal defect." *Id.* at 585. Clearly, it is settled in Kentucky that failure of the plaintiff to give any notice of the application for default where the defendant has appeared raises questions of due process, rendering the judgment void within the meaning of CR 60.02(e). Thus, the appellee's argument concerning the balancing of equities and the timeliness of Kearns' motion to set aside the judgment are not germane to the issue at hand.

The judgment of the Daviess Circuit Court is reversed and the matter is remanded with directions to set aside the default judgment.

HOWERTON, C.J., concurs.

WILHOIT, J., concurs with the result.

---

**2.** The notice provision of the Federal Rule is identical to ours.