COURT OF APPEALS OF VIRGINIA


Present:   Judges McClanahan, Petty and Powell
Argued at Richmond, Virginia


JAMES E. PHIFER, JR.

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1134-08-4                        JUDGE CLEO E. POWELL
                                                        SEPTEMBER 22, 2009

COMMONWEALTH OF VIRGINIA,
  DEPARTMENT OF SOCIAL SERVICES,
  DIVISION OF CHILD SUPPORT ENFORCEMENT,
  *ex rel.* PAMELA SCORE


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                     Robert W. Wooldridge, Jr., Judge

         Bryan P. Collins (Christopher A. Byrne; Marta Tanenhaus;
         Pillsbury Winthrop Shaw Pittman LLP, on briefs), for appellant.

         Elana E. Strom, Assistant Attorney General (Robert F. McDonnell,
         Attorney General; William C. Mims, Acting Attorney General;
         Craig M. Burshem, Senior Assistant Attorney General; Beth J.
         Edwards, Regional Senior Assistant Attorney General; Nancy J.
         Crawford, Regional Senior Assistant Attorney General;
         Cameron S. Meals, Assistant Attorney General, on briefs), for
         appellee.


        James E. Phifer, Jr., ("Phifer") appeals the decision of the trial court granting the Virginia

Division of Child Support Enforcement's ("DCSE") request for registration of a foreign support

order.  Specifically, Phifer argues that the default judgment obtained against him in the State of

Washington is void as he was denied the constitutional and statutory protections under the

Uniform Interstate Family Support Act ("UIFSA") and the Full Faith and Credit for Child

Support Orders and Act ("FFCCSOA").  Thus, he contends that the trial court erred in

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

registering a void judgment. Finding that Phifer was denied his constitutional right to due process, we reverse and vacate the trial court's decision to register the foreign judgment.

FACTS

Jacob James Score was born to Pamela Lee Score on November 3, 1993, in the State of Washington. The State provided public assistance to Pamela for Jacob from 1993 to 1996. Believing Phifer to be Jacob's father, the Washington Department of Child Support ("WDCS"), sought reimbursement from Phifer. On September 13, 1994, Phifer voluntarily contacted the WDCS and indicated that he was willing to cooperate with the WDCS. He provided the WDCS with his contact information, including his address.

On October 6, 1996, the King County Prosecuting Attorney's Office ("KCPA") served a summons and parentage petition on Phifer at his home address (the "Washington address").[1] A standardized answer form was attached to the summons. In his answer, Phifer denied that he was Jacob's father and requested that genetic testing be performed. In the "Future Notification" section of the answer, Phifer provided an address in Huntington, New York (the "New York address").[2]

On November 8, 1996, the KCPA filed its parentage petition, along with Phifer's answer, in the Superior Court of the State of Washington for King County ("Washington court"). On December 10, 1996, the KCPA filed a motion to compel genetic testing for Phifer. On

---

[1] Phifer had moved from the address he had provided the WDCS in 1994. The KCPA, however, found his new address by making an inquiry with the United States Postal Service.

[2] The "Future Notification" section specifically stated, in bold lettering: NOTICE OF FUTURE PROCEEDINGS SHOULD BE SENT TO THE FOLLOWING ADDRESS: . . . YOU MUST PROVIDE AN ADDRESS TO WHICH FUTURE NOTICES MAY BE SENT."

December 13, 1996, the KCPA mailed a copy of its motion compelling genetic testing, the proposed order, and a copy of the scheduling order to Phifer at the New York address.

On January 3, 1997, the Washington court conducted a hearing on the KCPA's motion. Phifer did not appear at the hearing. The Washington court ordered Phifer "to appear at a genetic testing facility . . . on January 7, 1997." The KCPA subsequently mailed a copy of the order to Phifer at the New York address on January 7, 1997 – the same day that the order required Phifer to appear for testing.

Phifer did not appear for testing on January 7, 1997, nor did he arrange for another appointment through the State's Attorney's office. However, on January 13, 1997, the motion compelling genetic testing, the proposed order, and the copy of the scheduling order that the KCPA had sent to Phifer on December 13, 1997 were returned, unopened and stamped "RETURN TO SENDER – ATTEMPTED UNKNOWN." Further, all additional correspondence sent to the New York address was subsequently returned to the KCPA unopened and stamped "RETURN TO SENDER – NO SUCH STREET IN HUNTINGTON, N.Y. 11743 DELIVERY AREA."[3]

---

[3] The following correspondence was sent to the New York address and returned:

1. Motion to compel genetic testing, proposed order, and a copy of the scheduling order; mailed on December 13, 1996; returned to the KCPA on January 13, 1997 stamped "RETURN TO SENDER – ATTEMPTED UNKNOWN."

2. Order requiring respondent to submit to genetic testing on January 7, 1997; mailed on January 7, 1997.

3. Motion for default judgment; mailed to both the New York and Washington addresses on April 25, 1997; the copy mailed to the New York address was returned to the KCPA on May 6, 1997 stamped "RETURN TO SENDER – NO SUCH STREET IN HUNTINGTON, N.Y. 11743 DELIVERY AREA."

4. Notice of continuance for the default judgment hearing – mailed on May 22, 1997; returned to the KCPA on June 2, 1997 stamped "RETURN TO SENDER – NO SUCH STREET IN HUNTINGTON, N.Y. 11743 DELIVERY AREA."

On April 25, 1997, the KCPA moved to have the Washington court strike Phifer's answer and enter an order of default. The KCPA's default judgment motion was set for a hearing on May 15, 1997. The KCPA then mailed copies of its default judgment motion and the hearing notice to Phifer at both the New York address and the Washington address. The notice sent to the New York address was subsequently returned; the notice sent to the Washington address was not.

On May 15, 1997, the Washington court was unexpectedly closed. Accordingly, the hearing was continued until June 5, 1997. On May 22, 1997, the KCPA mailed notice of the continuance to the New York address only. The notice was subsequently returned, unopened, to the KCPA on June 2, 1997 – three days before the scheduled hearing date.

On June 5, 1997, the Washington court conducted a hearing on the KCPA's default judgment motion. The basis of the default was Phifer's failure to attend genetic testing on January 7, 1997 as ordered by the Washington court. As with the prior hearings, Phifer did not appear. The Washington court found that it had proper jurisdiction, that Phifer was served with a copy of the summons and petition on October 6, 1996, that more than 20 days had elapsed since the date of service, that Phifer had responded and appeared, and that Phifer had received notice of the court order requiring him to submit to paternity testing, but failed to submit to such. Accordingly, the Washington court determined Phifer was in default and entered an order striking his answer. The Washington court also entered a default judgment and order establishing parentage and granting other relief (the "Washington judgment").

On June 24, 1997, the KCPA made an inquiry with the United States Postal Service and confirmed that Phifer was living at the Washington address and subsequently sent copies of the

default judgment to him at that address. On July 17, 1997, Phifer notified the Washington court that he had not received any of the mailings sent to the New York address.

At some point after he notified the court that he had not received any of the mailings, Phifer moved from the Washington address and eventually settled in Fairfax, Virginia. DCSE subsequently filed two motions with the Fairfax County Juvenile and Domestic Relations District Court: a request for Virginia registration of foreign support order, filed on February 8, 2005, and a related motion for a show cause summons, filed on February 9, 2005.

On January 25, 2006 the J&DR court dismissed the case for lack of jurisdiction, noting that "the Court cannot ascertain that due process was afforded [Phifer] and that the Washington Orders are valid and not void or voidable." DCSE appealed the decision to the Circuit Court of Fairfax County on the same day the case was dismissed in the J&DR court. Subsequently, on May 25, 2007, DCSE filed a motion seeking attorney's fees and other costs.

After hearing the evidence, the circuit court issued a letter opinion on February 11, 2008, granting DCSE's motion to register the default judgment against Phifer. The trial court determined that, even though WDCS and the KCPA knew that the notices sent to the New York address were returned undeliverable, Phifer's due process rights were not violated because Phifer provided the New York address.

On April 7, 2008, the court entered an order memorializing the findings and ruling it set forth in the February 11, 2008 letter opinion. However, the order stated "this case is continued for the purpose of hearing DCSE's motion for a rule to show cause for failure to pay child support as well as DCSE's motion for attorney's fees and other costs." Phifer appeals.

## ANALYSIS

### Appealable Order

As an initial matter, we must determine whether this Court has jurisdiction over this appeal. "The Court of Appeals has appellate jurisdiction over final decrees of a circuit court in domestic relations matters arising under Titles 16.1 or 20, and any interlocutory decree or order . . . adjudicating the principles of a cause." Erikson v. Erikson, 19 Va. App. 389, 390, 451 S.E.2d 711, 712 (1994) (internal quotation marks omitted); see also Code § 17.1-405(3)(f) and -405(4).

"A final order or decree is one 'which disposes of the whole subject, gives all the relief that is contemplated, and leaves nothing to be done by the court.'" Alexander v. Flowers, 51 Va. App. 404, 411, 658 S.E.2d 355, 358 (2008) (quoting Erikson, 19 Va. App. at 390, 451 S.E.2d at 712). "[A]n order that 'retains jurisdiction to reconsider the judgment or to address other matters still pending' is not a final order." Id. (quoting Super Fresh Food Mkts of Va., Inc. v. Ruffin, 263 Va. 555, 561, 561 S.E.2d 734, 737 (2002)).

In the present case, the April 7, 2008 order clearly states "this case is continued for the purpose of hearing . . . DCSE's motion for attorney's fees and other costs." Thus, the trial court specifically retained jurisdiction to address the matter of attorney's fees. See Mina v. Mina, 45 Va. App. 215, 217, 609 S.E.2d 622, 624 (2005) (holding that an order adjudicating the merits of the claim but reserving ruling on one party's request for attorney's fees was not a final order for purposes of appeal). As such, the order cannot be considered a final order which disposes of the whole subject and leaves nothing to be done by the court. Thus, unless the April 7, 2008 order is an interlocutory order that "adjudicates the principles of a cause," this Court does not have jurisdiction to consider Phifer's appeal.

An interlocutory order adjudicates the principles of a cause, when

> the rules or methods by which the rights of the parties are to be finally worked out have been so far determined that it is only necessary to apply these rules or methods to the facts of the case in order to ascertain the relative rights of the parties with regard to the subject matter of the suit.

Lancaster v. Lancaster, 86 Va. 201, 204-05, 9 S.E. 988, 990 (1889). "An interlocutory order or decree that adjudicates the principles of a cause is one which must 'determine the rights of the parties' and 'would of necessity affect the final order in the case.'" Erikson, 19 Va. App. at 391, 451 S.E.2d at 713 (quoting Pinkard v. Pinkard, 12 Va. App. 848, 851, 407 S.E.2d 339, 341 (1991)). Furthermore, "'[t]he mere possibility that an interlocutory decree may affect the final decision in the trial does not necessitate an immediate appeal.'" Id. (quoting Polumbo v. Polumbo, 13 Va. App. 306, 307, 411 S.E.2d 229, 229 (1991)).

This Court has previously held that "where a trial court . . . enters an order resolving only *some* of the main objects of the suit, such an order normally does not adjudicate 'the principles of a cause.'" de Haan v. de Haan, 54 Va. App. 428, 443, 680 S.E.2d 297, ___ (2009) (emphasis added). A necessary corollary to this is that where a trial court enters an order resolving *all* of the main objects of the suit, such an order does adjudicate "the principles of a cause." Cf. Crowder v. Crowder, 125 Va. 80, 83, 99 S.E. 746, 747 (1919) (holding that an interlocutory order is appealable where it resolves "all the questions raised by the complainant's bill").

In the present case, there was only one "object" of DCSE's suit: the registration of the Washington orders. The April 7, 2008 order provides that the Washington judgment is valid and enforceable, DCSE's request to register the Washington judgment is confirmed, and Phifer owes $26,599.08 in child support arrears. The trial court then continued the case to hear DCSE's motion for a rule to show cause and DCSE's motion for attorney's fees and other costs incurred. Thus, the only matters left to be adjudicated related to enforcement of the Washington

orders[4] or matters that arose during the pendency of the suit and were not included in the original petition.[5]

Furthermore, in light of the fact that DCSE filed a motion for a rule to show cause in anticipation that its request would be granted and the foreign judgment would be registered, it is apparent that enforcement of the judgment was more than a possibility in the present case. Although this fact alone is not dispositive of the appealability of an interlocutory order, it is certainly a factor to be considered.[6]

Thus, it is readily apparent that the April 7, 2008 order resolves "all the questions raised by the complainant's bill," specifically determines the rights of the parties, and necessarily affects the final order in this case. Furthermore, the registration of the Washington orders had

[4] In addition to arguing that the order is not appealable because the trial court continued the case to hear DCSE's motion for attorney's fees and other costs, DCSE also argues that the April 7, 2008 order is not ripe for appeal because the notice of appeal was filed before the hearing on DCSE's motion for a rule to show cause. In effect, DCSE seeks to have its cake and eat it too: it seeks to treat the order as final for purposes of enforcement, but not final for purposes of appeal.

Contrary to DCSE's position, the trial court's decision to continue the case for the purpose of hearing DCSE's motion for a rule to show cause is irrelevant to our determination of whether the April 7, 2008 order is an appealable interlocutory order. It is well established that, when this Court obtains jurisdiction because of an appeal, "'the jurisdiction of the trial court from which the appeal was taken must cease.'" Decker v. Decker, 17 Va. App. 562, 564, 440 S.E.2d 411, 412 (1994) (quoting Greene v. Greene, 223 Va. 210, 212, 288 S.E.2d 447, 448 (1982)). This loss of jurisdiction applies to the modification of the trial court's order; the trial court still retains jurisdiction to actually *enforce* the appealed order. Id. Thus, the fact that the trial court had not yet enforced the Washington orders has no effect upon the appealability of the registration of those orders.

[5] DCSE did not file its motion for attorney's fees and other costs until May 25, 2007, sixteen (16) months after it appealed the J&DR court's dismissal of the case for lack of jurisdiction.

[6] In Weizenbaum v. Weizenbaum, 12 Va. App. 899, 902, 407 S.E.2d 37, 39 (1991), we held that the interlocutory order in that case was appealable because, "if appellant does not now appeal, appellee may seek to execute the judgment and appellant will have no recourse against execution." However, as we noted in de Haan, the holding in Weizenbaum, while correct, has limited relevance outside of its facts. de Haan, 54 Va. App. at 443 n.10, 680 S.E.2d at n.10.

immediate consequences for Phifer that could not be remedied by waiting until a final order is entered. Accordingly, we conclude that the April 7, 2008 order is an appealable interlocutory order that adjudicated the "principles of a cause" within the meaning of Code § 17.1-405(4).

<u>Validity of the Washington Judgment</u>

Having determined that the April 7, 2008 order is an appealable interlocutory order, we turn to Phifer's argument that the Washington judgment is void and, therefore, the trial court erred in registering the judgment. Phifer specifically challenges the registration of the Washington judgment on the basis that the KCPA's mailing of the notices to an address it knew to be invalid was a violation of his right to due process under the FFCCSOA, which is grounds for barring registration of the judgment in Virginia. We agree.

The due process protections of the FFCCSOA are primarily constitutional. On appeal, we view constitutional arguments as questions of law, which we review *de novo*." Shivaee v. Commonwealth, 270 Va. 112, 119, 613 S.E.2d 570, 574 (2005).

Under Washington law, once a defendant has made an appearance in a case, that defendant "is entitled to notice of all subsequent proceedings." Rev. Code Wash. § 4.28.210. Several provisions of Washington state law are relevant as to whether Phifer received adequate notice or opportunity to be heard. With regard to the service of process, the applicable Washington Superior Court Civil Rule provides as follows:

> (a) Service -- When required
>
> Except as otherwise provided in these rules, every order required by its terms to be served, every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and *every written notice*, appearance, demand, offer of judgment, designation of record on appeal, and similar paper shall be served upon each of the parties.

- 9 -

        \*     \*     \*     \*     \*     \*     \*

(b) Service -- How made

        \*     \*     \*     \*     \*     \*     \*

(2) Service by mail

(A) How made

If service is made by mail, the papers shall be deposited in the post office addressed to the person on whom they are being served, with the postage prepaid.  The service shall be deemed complete upon the third day following the day upon which they are placed in the mail, unless the third day falls on a Saturday, Sunday or legal holiday, in which event service shall be deemed complete on the first day other than a Saturday, Sunday or legal holiday, following the third day.

        \*     \*     \*     \*     \*     \*     \*

(3) Service on nonresidents

Where a plaintiff or defendant who has appeared resides outside the state and has no attorney in the action, the service may be made by mail *if his residence is known; if not known, on the clerk of the court for him.*

Wash. Sup. Ct. Civil R. 5 (emphasis added).

Washington Superior Court Civil Rule 55(a)(3) governs entry of default judgment and provides, in part, as follows:

Notice -- Any party who has appeared in the action for any purpose shall be served with a written notice of motion for default and the supporting affidavit at least 5 days before the hearing on the motion.

It is readily apparent that, by answering the summons and parentage petition, Phifer made an appearance under Washington law.  Consequently, Phifer was entitled to notice of all subsequent proceedings.  Viewed in the light most favorable to the prevailing party, the evidence demonstrates that Phifer had notice of the pending motion for default judgment.  However, the record also clearly indicates that he did not receive notice of the rescheduled hearing.  DCSE

- 10 -

argues that, because Phifer supplied the KCPA with the erroneous New York address, the KCPA was entitled to rely upon it. DCSE further argues that, regardless of the fact that the KCPA was aware that Phifer never received any of the correspondence sent to the New York address, the KCPA was under no obligation to search for an alternate address. Again, we must disagree.

Under Washington law, Phifer was entitled to be served with notice of the rescheduled hearing on the motion for default judgment. Such notice may be mailed to a nonresident *if* his residence is known. Wash. Sup. Ct. Civil R. 5(b)(3). The KCPA reasonably believed that Phifer was living in New York, thus making him a nonresident. However, by May 22, 1997, the date the KCPA mailed the notice of the rescheduled default hearing to Phifer at the New York address, it was patently obvious that his residence was not known because all correspondence sent to that address had been returned with such indications as "ATTEMPTED UNKNOWN" and "NO SUCH STREET IN HUNTINGTON, N.Y. 11743 DELIVERY AREA." Therefore, as it was clear that the New York address was invalid, the KCPA was required to, at a minimum, serve the notice on the clerk of the court. Wash. Sup. Ct. Civil R. 5(b)(3). In the alternative, the KCPA could have served it on the Washington address, to which they served the summons and parentage petitions and mailed the motion for default judgment.[7]

There is a split of authority on whether failure to provide notice of a default judgment hearing to a defendant, who has actually made an appearance and not otherwise waived notice, still rises to the level of a due process violation such that the judgment may be collaterally attacked and rendered void. See R.D. Hursh, Annotation, Effect, Under Rule 55(b)(2) of the Federal Rules of Civil Procedure and Similar State Statutes and Rules, of Failure, Prior to Taking

---

[7] Furthermore, the KCPA's "notice" to Phifer is also deficient in that the motion for default judgment is based on Phifer's failure to appear for genetic testing on January 7, 1997. Even if the notice had been sent to a correct address, the motion was mailed on January 7, 1997, the same date on which Phifer was ordered to appear for the test.

Default Judgment Against a Party Who Has Appeared, to Serve 3-Day Written Notice of Application for Judgment, 51 A.L.R.2d 837 (2008) (cases cited therein).

Neither the United States Supreme Court nor a Virginia appellate court has ruled directly on this issue. See Eddine v. Eddine, 12 Va. App. 760, 406 S.E.2d 914 (1991) (holding defendant's due process rights were not violated from his having received no notice of a hearing *where trial court had previously dispensed with notice to defendant* because when he moved from Virginia he failed to file a written statement of his new address as required by the Virginia Code). However, we are persuaded by the decisions of the courts in several jurisdictions that have held that the absence of notice of a default judgment hearing to a defendant, who has not already waived the right to notice, is a due process violation rendering the default judgment void. See Termnet Merchant Services, Inc. v. Marson, 177 Fed. Appx. 878, 880 (11th Cir. 2006) (unpublished); Roxford Foods, Inc. v. Ford, 12 F.3d 875, 881-82 (9th Cir. 1993); Bass v. Hoagland, 172 F.2d 205, 210 (5th Cir. 1949); Sonus Corp. v. Matsushita Elec. Indus. Co., 61 F.R.D. 644, 648-49 (D. Mass. 1974); Ken-Mar Airpark Inc. v. Toth Aircraft & Accessories Co., 12 F.R.D. 399 (W.D. Mo. 1952); Leedy v. Thacker, 245 S.W.3d 792, 796 (Ky. App. 2008); Kearns v. Ayer, 746 S.W.2d 94, 96 (Ky. App. 1988); First National Bank of Telluride v. Fleisher, 2 P.3d 706, 714 (Colo. 2000); Rosander v. Nightrunners Transport, Ltd., 196 P.3d 711, 714 (Wash. App. 2008) ("[a] trial court has no authority to enter a default judgment against a party who has appeared but did not receive proper notice"); Hully v. Hully, 653 So. 2d 1138, 1140 (Fla. App. 1995); Clark v. Perlman, 599 So. 2d 710, 712 (Fla. App. 1992); Ruwart v. Wagner, 880 P.2d 586, 591 (Wyo. 1994); Hagar v. Goodyear Tire and Rubber Co., 853 P.2d 768, 796-97 (Okla. 1993); Dymon, Inc. v. Hyman, 406 S.E.2d 388 (S.C. App. 1991); Rodriguez v. Conant, 737 P.2d 527, 530 (N.M. 1987); McClintock v. Serv-Us Bankers, 436 P.2d 891, 893 (Ariz. 1968); Phoenix Metals Corp. v. Roth, 284 P.2d 645, 647 (Ariz. 1955); National Inv. Co. v.

Bronner, 704 P.2d 268, 269-70 (Ariz. App. 1985); see also Bryant v. Edwards, 707 S.W.2d 868, 870 (Tenn. 1986) ("[I]t is axiomatic that all parties to litigation are entitled to receive notice of important hearings and other proceedings; due process requires it."). These cases have been decided generally in the context of a court rule or statute requiring that such notice be given within a set number of days before the default judgment hearing was to be held, as was the case under Washington law for the default judgment hearing at issue here. See Wash. Sup. Ct. Civil R. 55(a)(3). As Washington law required that Phifer be given notice of the rescheduled default judgment hearing, it is thus established that he had a valid "due process expectation[]" that he receive such notice. First National Bank of Telluride, 2 P.3d at 714.

The FFCCSOA mandates that each state "shall enforce according to its terms a child support order made consistently with [the FFCCSOA] by a court of another State." 28 U.S.C. § 1738B(a)(1). "A child support order made by a court of a State is made consistently with [the FFCCSOA] if . . . reasonable notice and opportunity to be heard is given to the contestants." 28 U.S.C. § 1738B(c)(2).

Under the Fourteenth Amendment of the United States Constitution, no state may "deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV, § 1. The Supreme Court has interpreted this to mean that before a state can take an individual's property, it must provide notice which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). The Court recognized that, while the "practicalities and peculiarities" of each case may be different,

> when notice is a person's due, process which is a mere gesture is not due process. *The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.* The reasonableness and hence the

- 13 -

constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . . or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.

Id. at 315 (emphasis added).

The Supreme Court has specifically examined whether "due process entails further responsibility when the government becomes aware prior to the taking that its attempt at notice failed." Jones v. Flowers, 547 U.S. 220, 227 (2006). Jones involves several facts not wholly dissimilar to those of the present case. In Jones, the Commissioner of State Lands for the State of Arkansas attempted to contact Jones to inform him that he was delinquent in his state property taxes. The commissioner mailed a certified letter to Jones at the address of the property burdened by the delinquent taxes. The certified letter was later returned to the commissioner, unopened and marked "Unclaimed."[8] The property was subsequently sold at auction. In determining that the state's sale of the property was invalid, the Supreme Court held that "when mailed notice . . . is returned unclaimed, the State must take additional reasonable steps to provide notice to the property owner . . . if it is practicable to do so." Id. at 225.

In the present case, as in Jones, although "the State may have made a reasonable calculation of how to reach [Phifer], it had good reason to suspect when the notice was returned that [Phifer] was 'no better off than if the notice had never been sent'" Id. at 230 (quoting Malone v. Robinson, 614 A.2d 33, 37 (D.C. Cir. 1992) (per curiam)). Furthermore, "the government's knowledge that notice pursuant to the normal procedure was ineffective triggered an obligation on the government's part to take additional steps to effect notice." Id.

---

[8] Interestingly, one of the arguments made by the state was that it sent notice to an address that Jones provided and had a legal obligation to keep updated. Jones, 547 U.S. at 231. Ultimately unpersuasive, this argument is similar to the argument advanced by DCSE that it was reasonable for the KCPA to rely upon the address provided by Phifer, even in light of its knowledge that the address did not exist.

As Phifer provided a non-existent address to the KCPA, we cannot say that Phifer is particularly blameless for the fact that he did not receive the notices sent on December 13, 1996 or January 7, 1997. However, upon learning that the address provided by Phifer did not exist, the onus was on the KCPA to take "additional, reasonable steps to notify [Phifer], if it [was] practicable to do so." Id. at 234-35. Thus, the state was required to employ such means as one desirous of *actually* informing Phifer might reasonably adopt. Mullane, 339 U.S. at 315.

We find that, upon learning that the New York address was invalid, the KCPA failed to take additional, reasonable steps to notify Phifer. A reasonable step in attempting to reach Phifer would have been for the KCPA to send a copy of the notice to the Washington address. Indeed, the KCPA had provided such notice when it mailed the initial motion for default judgment to both the New York and Washington addresses; yet it only sent notice of the rescheduled hearing to the New York address.[9]

Furthermore, we find that it would have been practicable to take the extra step. This is not a case where the KCPA was required to make an open ended search for Phifer's address;

---

[9] DCSE's argument regarding the KCPA's reliance on the non-existent New York address is further weakened by the hypothetical situation discussed by the Supreme Court in Jones:

> If the Commissioner prepared a stack of letters to mail to delinquent taxpayers, handed them to the postman, and then watched as the departing postman accidentally dropped the letters down a storm drain, one would certainly expect the Commissioner's office to prepare a new stack of letters and send them again. No one "desirous of actually informing" the owners would simply shrug his shoulders as the letters disappeared and say "I tried." Failure to follow up would be unreasonable, despite the fact that the letters were reasonably calculated to reach their intended recipients when delivered to the postman.

Jones, 547 U.S. at 229.

rather, the record clearly establishes that the KCPA already had Phifer's Washington address.[10] The KCPA merely needed to send a copy of the notice to both the Washington and New York addresses, as it had done with the motion for default judgment. By failing to employ reasonable means of informing Phifer of the rescheduled hearing, the KCPA denied Phifer his due process right to adequate notice and opportunity to be heard. As the Washington judgment is not a child support order "made consistently" with the FFCCSOA, we must find that the trial court erred in registering the default judgment.

### CONCLUSION

Having determined that Phifer's right to due process was violated, we need not examine the issue of whether registration of the Washington judgment was barred under UIFSA. For the foregoing reasons, the order registering the Washington judgment is vacated.

<u>Reversed and vacated.</u>

---

[10] Indeed, Phifer's address appears to have been fairly easy to obtain. The record demonstrates that on June 24, 1997 the KCPA confirmed that Phifer was still living at the Washington address and sent copies of the Washington judgment to him at that address. The record further indicates that the WDCS confirmed that Phifer was still living at the Washington Address on April 18, 1997.