RENDERED:  JUNE 23, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1199-ME

NATHANIEL L. HERRELL                                        APPELLANT

|  | APPEAL FROM DAVIESS CIRCUIT COURT |
| v. | HONORABLE JOE CASTLEN, SPECIAL JUDGE |
|  | ACTION NO. 15-D-00134-002 |

KELSEY R. MILLER                                             APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, COMBS, AND KAREM, JUDGES.

KAREM, JUDGE:  Nathaniel L. Herrell appeals from the Daviess Family Court's

entry of an amended domestic violence order ("DVO") on September 7, 2022,

extending for another three years a DVO entered on July 3, 2019.  The DVO was

entered on behalf of Herrell's minor son, M.H. ("Child") and Child's mother,

Kelsey R. Miller.  Herrell's arguments that his due process rights were violated by

the entry of the underlying DVO in 2019, are barred for his failure to bring a timely appeal from that order. As to the amended order entered in 2022, the family court was required to appoint a guardian *ad litem* ("GAL") for Child in accordance with the directive in *Smith v. Doe*, 627 S.W.3d 903 (Ky. 2021); however, we hold the family court's failure to do so in this case is harmless error and therefore affirm.

Herrell and Miller are the natural parents of Child. They lived together until shortly after Child was born, when, according to Herrell's testimony, he "kicked her out." When Child was four years of age, Miller filed a petition for an emergency protective order ("EPO") on behalf of Child relating to an incident which occurred during a weekend visitation with Herrell. Child's visitation with his father commenced on Thursday, June 20, 2019, and Herrell returned Child to his daycare the following Monday morning. When the daycare workers asked Child what he did on the weekend, Child responded, "I sucked on daddy's wee wee and he sucked on mine. Daddy put his wee wee in my butt. It doesn't hurt if daddy does it a little but he says harder and faster." The detective who initially investigated the incident reported that the day care worker said Child was showing signs of pain and told her "his butt hurts" when she picked him up to hold him. She also told the officer that Child seemed embarrassed to talk about what happened and kept chewing his shirt in a nervous manner. The nurse at the

emergency room who examined Child told the officer there was no sign of penetration but there was bruising on Child's legs "not inconsistent with child abuse." The Cabinet for Health and Family Services and the Daviess County Sheriff's Office initiated investigations into the incident. Ultimately, the Cabinet did not substantiate the charges nor were criminal charges laid against Herrell.

The family court entered an EPO against Herrell on June 26, 2019. On July 3, 2019, while the investigations into the incident were still ongoing, the family court held a hearing on whether to grant a DVO. Herrell was present at the hearing. He was not represented by counsel. Miller was present with counsel. Miller's counsel told the court they were seeking a three-year, no contact order. The family court asked Herrell if he agreed, and he said that he did. Herrell then told the court that he had a question. The court cautioned him that because of the ongoing investigations, and the possibility of criminal charges, anything he said could be used against him. He indicated that he understood and asked if, after the criminal investigation was completed and the three years were over, he could come back and "have this altered." The court told him that he could always come back and ask to have the order amended. On June 3, 2019, by agreement of the parties, the family court entered the DVO restraining Herrell from any contact with Miller or Child and from going within 500 feet of Miller's residence, her place of employment, and Child's daycare. The DVO was set to expire on July 3, 2022.

On June 15, 2022, Miller a filed a motion to extend the DVO. After conducting a hearing in chambers with Child at which Miller was present, the family court determined that Child, who was seven years of age, was competent as a witness. It conducted a final hearing on September 7, 2022, at which time Herrell and Miller were both present and represented by counsel.

Miller testified that she wanted three more years of no contact between Herrell and Child. Child was examined by the attorneys in the judge's chambers and asked to recall what happened in 2019. Child stated that he took a shower and went to the bathroom together with Herrell, that they lay on the couch together, that Herrell put his body on Child's body, that it involved his private parts, and that Child did not have any clothes on at the time.

Testimony was also heard via telephone from the Cabinet worker assigned to the case. She stated that Child was interviewed three or four times about the allegations and one of the interviews was a year after the alleged event occurred. She said there was no evidence on examination that he had been abused.

The police detective who conducted the investigation into the incident testified that there was not enough evidence to seek a criminal prosecution. He stated that the weak point of the case was that Child called both Herrell and his stepfather "dad." He further testified, however, that he believed Child was referring to Herrell when he described what had occurred.

Herrell testified that he did not play much with Child when he was at his home. He explained that he spent his time working or playing video games and did not pay much attention to the children; that his fiancé took care of that. He said he was not feeding, clothing, or showering with Child. He testified that he was never naked around Child although Child would get in the shower with him. He explained that at the first DVO hearing three years before, he thought it best to let the order go while the criminal investigation was ongoing. He acknowledged that in 2011, he had entered a plea of guilty to first-degree criminal abuse of a child after his ex-wife accused him of breaking and bruising their son's arm.

At the close of the hearing, Herrell's counsel argued that Herrell's due process rights had been violated at the 2019 hearing. The judge pointed out that Herrell had agreed to the DVO at that time and that many DVOs were entered pursuant to an agreement of the parties. The family court found Child to be a credible witness whose statements were consistent and entered an order extending the DVO for another three years. This appeal by Herrell followed.

Herrell argues that even though he agreed to the entry of the DVO in 2019, it should be vacated because the proceedings failed to meet the minimum requirements of due process. Specifically, he alleges that his rights were violated in 2019 because he was not represented by counsel, he was not afforded a full evidentiary hearing, the family court relied solely on the contents of the petition,

on extra-judicial evidence and hearsay, and essentially prohibited him from testifying by warning him against self-incrimination. He further argues that Miller was not entitled to a DVO because she made no allegations of domestic violence committed against her by Herrell. Herrell argues that the circumstances of his case are similar to those in *Clark v. Parrett*, 559 S.W.3d 872 (Ky. App. 2018), in which a panel of this Court vacated a DVO for various due process violations. Unlike the appellant in *Clark*, however, Herrell failed to file a timely appeal from the entry of the DVO against him.

Herrell could have raised all his arguments in a direct appeal from the original DVO entered in 2019. An individual against whom a DVO is entered is precluded from contesting its propriety in a later appeal if he or she fails to file a timely appeal from the entry of the original DVO. *Stinson v. Stinson*, 381 S.W.3d 333, 336 (Ky. App. 2012). "[A]ppeals from the issuance of DVOs are required to be filed within 30 days." *Erwin v. Cruz*, 423 S.W.3d 234, 236-37 (Ky. App. 2014); Kentucky Rules of Appellate Procedure ("RAP") 3 (formerly Kentucky Rules of Civil Procedure ("CR") 73.02).

Herrell attempts to evade this procedural bar by arguing that the alleged violation of his due process rights renders the initial DVO, and by extension the amended DVO, void and legally null. A void judgment "unlike one which is merely erroneous or voidable, is not entitled to any respect or deference

-6-

by the courts of the Commonwealth but instead is open to attack anytime and any place." *Mathews v. Mathews*, 731 S.W.2d 832, 833 (Ky. App. 1987) (citation and quotation marks omitted). This argument ignores the distinction between a void judgment and one that is voidable. "[T]he generally accepted rule is that where the court has jurisdiction of parties and subject matter, the judgment, if erroneous, is voidable, not void." *Puckett v. Cabinet for Health and Family Services*, 621 S.W.3d 402, 410 (Ky. 2021) (quoting *Dix v. Dix*, 310 Ky. 818, 222 S.W.2d 839, 842 (1949)). Herrell does not dispute that the family court had jurisdiction of the parties and subject matter when it entered the initial DVO against him. "Once a court has acquired subject matter and personal jurisdiction . . . challenges to its subsequent rulings and judgment are questions incident to the exercise of jurisdiction rather than to the *existence* of jurisdiction." *Cabinet for Health and Family Services v. Batie*, 645 S.W.3d 452, 470-71 (Ky. App. 2022) (emphasis in original) (citations omitted). All other issues are subject to waiver for failure to appeal.

Another case upon which Herrell relies, *Kearns v. Ayer*, 746 S.W.2d 94 (Ky. App. 1988), is distinguishable on similar grounds. In *Kearns*, the trial court granted a default judgment without notice to the defendant, even though he had timely submitted a letter to the court asserting he was not responsible for the debt which was the subject of the action against him. The defendant then filed a

CR 60.02 motion to set aside the default judgment, which the trial court denied. The Court of Appeals reversed the trial court on the grounds that a judgment rendered without due process is a nullity for purposes of CR 60.02(e), which provides that "[o]n motion a court may, upon such terms as are just, relieve a party . . . from its final judgment, order, or proceeding . . . [if] the judgment is void[.]" The *Kearns* opinion states: "[I]t is settled in Kentucky that failure of the plaintiff to give any notice of the application for default where the defendant has appeared raises questions of due process, rendering the judgment void **within the meaning of CR 60.02(e)**." 746 S.W.2d at 96 (emphasis supplied). "[T]he relief afforded by CR 60.02 as to 'final judgments, orders, or proceedings' is available as to DVOs if a movant sets forth any of the criteria covered by the rule." *Roberts v. Bucci*, 218 S.W.3d 395, 397 (Ky. App. 2007). Unlike the defendant in *Kearns*, Herrell never filed a post-judgment motion in the family court to set aside the DVO against him and consequently we are without authority to review his due process arguments. *Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989).

Herrell further argues that the family court's finding that domestic violence and abuse occurred is not supported by the evidence. Insofar as he is challenging the evidentiary basis of the original DVO, his argument is barred for the reasons explained above. As to the evidentiary basis for the extension of the order, the standard for the extension of a DVO differs from the standard for the

initial entry of the order.  Kentucky Revised Statutes ("KRS") 403.740 provides in pertinent part as follows:

> A domestic violence order shall be effective for a period of time fixed by the court, not to exceed three (3) years, and may be reissued upon expiration for subsequent periods of up to three (3) years each.  The fact that an order has not been violated since its issuance may be considered by a court in hearing a request for a reissuance of the order.

KRS 403.740(4).  The statutory provision previously in effect similarly provided that "any party may present to the court testimony relating to the importance of the fact that acts of domestic violence or abuse have not occurred during the pendency of the order."  KRS 403.750 (2010).  "[N]either the statute nor due process requires an evidentiary hearing prior to the extension of a DVO."  *Cottrell v. Cottrell*, 571 S.W.3d 590, 592 (Ky. App. 2019).  Although an evidentiary hearing is not required, "some showing of a continued need for [a] DVO . . . although additional acts of domestic violence need not be proven."  *Rupp v. Rupp*, 357 S.W.3d 207, 209 (Ky. App. 2011).

In this case, the family court chose to conduct an evidentiary hearing on Miller's petition.  It heard testimony from Child, and relied heavily on that testimony, but did not appoint a GAL to represent Child.  Herrell correctly asserts that our caselaw mandates the trial court appoint an attorney in the absence of representation for a minor child who is party in a protective order hearing.  *Smith*,

627 S.W.3d 903. Additionally, Miller's attorney only noticed his appearance on behalf of the petitioner; however, the failure on the part of the family court to appoint a guardian *ad litem* in this case was harmless error.

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

CR 61.01.

While Miller's attorney did not formally announce he represented Child, his representation during the hearing was in conformity with the intentions of the Kentucky Supreme Court in *Smith*, which described the role of a GAL as follows:

> [T]he GAL is the child's agent and is responsible . . . for making motions, for introducing evidence, and for advancing evidence-based arguments on the child's behalf.

*Smith*, 627 S.W.3d at 915 (citing CR 17.03).

In contrast to *Smith,* where no attorney was present to act on behalf of the minor child, in the case at bar the petitioner's attorney actively engaged in the hearing on behalf of Child; calling witnesses and making arguments. Here, the

allegations were centered around alleged actions of Herrell toward Child. If any party were to be aggrieved by the court's failure to appoint a GAL it would be Child; and, in the case at bar, Child received the utmost protection afforded in the law. Therefore, any misstep on the part of the family court was harmless error. However, trial courts should be warned that this outcome may not follow in subsequent cases. Per *Smith*, a minor child must be represented in hearings for protective orders either as private counsel, or where there is none, by the appointment of a GAL.

For the foregoing reasons, the order of the Daviess Family Court is affirmed.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Christopher W. Riccio
Owensboro, Kentucky

BRIEF FOR APPELLEE:

Nathan Moorhouse
Owensboro, Kentucky