# Packer et al. v. Johnson.

May 7, 1948.

Louis C. Taylor and C. Ewbank Tucker for appellants.

W. M. Harvin for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

This appeal is from a habeas corpus proceeding. A detailed statement of all the facts would unnecessarily extend this opinion. However, it is necessary to relate a great many of the facts in order properly to understand the problems under consideration.

In the early part of 1946, Percilla Johnson left her home in Manchester and sought employment as a maid in the home of Mrs. W. T. Hayes in Shelby County. Some time after the commencement of her employment the fact that Percilla was pregnant became obvious. Whereupon, Mrs. Hayes immediately communicated this information to Percilla's mother, who came to Shelbyville to render what assistance she might in the matter. Mrs. Hayes then contacted the Good Shepherd Convent in Louisville in effort to make arrangements for the confinement of Percilla. It appears that some time prior to the communication from Mrs. Hayes, a Helen

Packer had been in touch with the Good Shepherd Convent making inquiry about the adoption of a child born under circumstances such as this. The Good Shepherd Convent immediately informed Mrs. Hayes of the inquiry from Helen Packer and also advised Helen Packer of the anticipated birth of a child to Percilla Johnson. Helen Packer then got in touch with Percilla Johnson and Mrs. Hayes and arrangements were made for Percilla Johnson to go to the home of Helen Packer's foster mother, Sarah Frierson, where she remained until the time of her confinement. Arrangement was also made with Helen Packer to take care of this baby until the mother was able to care for it. On July 3rd Percilla was admitted to the General Hospital, Louisville, and the baby was born. On or about the 11th of July she, with her baby, returned to the foster mother's home.

What prompted the remaining part of this somber story with its increasing complexities is somewhat difficult to understand. It appears that Helen Packer and her husband, Ashley Packer, had been having domestic difficulties. One would conclude that Ashley wanted a child and Helen did not. Possibly, if not quite probably, Helen conceived the idea of making Ashley believe this baby born to Percilla Johnson was her child and thus reconcile him and bring a semblance of peace and happiness to their home. On July 11th, which was the same day that Percilla and her baby returned to the home of Helen's foster mother, Ashley Packer, who was at that time living with his mother, received a telephone communication from Percilla Johnson, who was yet at the home of Helen's foster mother, that his wife had given birth to a baby. Whereupon, he proceeded to this home where he found his wife in bed with a baby. Helen greeted him with: "Ashley, here is your baby, and to think it's name is Ashley, Jr."

A short time afterwards, divorce proceedings were instituted by Ashley Packer against his wife wherein Ashley asked for care and custody of their child. An agreed order was entered whereby it was agreed that Helen would withgo any claims for care and custody of the child and that the child would be placed in the Kentucky Children's Home. The child was so placed and soon afterwards Anna Mae Hall, sister of Ashley Packer, and her husband brought adoption proceedings

and the child was adopted to Anna Mae Hall and her husband, and its name was changed on the vital statistics records to Ashley Packer Hall, Jr.

This action was instituted to obtain possession and custody of this child. Upon hearing the court adjudged Percilla Johnson to be the mother of the child and granted her its custody and care. Anna Mae Hall and Ashley Packer appeal.

Appellants take the position that habeas corpus proceedings will not lie here but that the method of procedure would be, first, to attack and have voided the judgment of adoption, and that as long as the judgment of adoption stands the adoptive parents should have the control, care and custody of the child, and that the judgment rendered and entered by the same court, in effect, nullifies and voids the judgment of adoption without the judgment ever having been attacked.

It will be necessary to go a bit further into the evidence that we might know the circumstances and facts prompting the Judge so to decide. In the first place, considerable evidence was taken by the plaintiff to show that she actually is the mother. The records from the General Hospital show that she was admitted on July 3rd. The birth certificate, which was entered some 7 or 8 days later, gives the name of Ashley Johnson. Helen Packer testified that it was at her suggestion, Percilla named the child Ashley.

Dr. Blackerby testified concerning the birth certificate as filed giving the name Ashley Johnson. He further testified that in November 1947, more than a year after the child was born, Ashley Packer came to the Bureau of Vital Statistics and talked with him about having a birth certificate for Ashley Packer, Jr., filed. Whereupon, Dr. Blackerby informed him that he would have to have an affidavit from the nearest of kin and also from a disinterested person in order to have a delayed certificate filed.

In the early part of 1948, Anna Mae Hall made her appearance at the Bureau of Vital Statistics with the affidavits as suggested by Dr. Blackerby, but the nearest of kin was that of Anna Mae Hall. Dr. Blackerby asked her why she did not have the mother's affidavit. Anna

Mae Hall replied that the mother was dead and that she was the nearest of kin. This was accepted and the birth certificate of Ashley Packer was filed. At the same time Anna Mae Hall presented a court order of adoption showing the adoption of this child and asked Dr. Blackerby to change the name from Ashley Packer to Ashley Packer Hall, Jr. This also was done.

Helen Packer stated on examination that this was not her child and that the child belonged to Percilla Johnson. She told practically the same story that Percilla Johnson told as to the manner and method of contacting each other. This was corroborated by the testimony of Sister Christine from the Good Shepherd Convent.

As is customary in the hospitals, the print of the baby's foot was placed on the record and also the finger print of the mother. Detective George Blaydes testified that the finger print definitely was not that of Helen Packer's but that it was a very poor finger print and was nothing much more than a smudge, but in comparing the finger print with that of Percilla Johnson stated that they were very similar and that he could, by taking 2 or 3 additional days magnifying the print, tell definitely.

The story of Percilla Johnson was corroborated by that of her mother. Sarah Frierson, the foster mother in whose home Percilla stayed prior to confinement and immediately afterwards, who was also an employee in the General Hospital, testified definitely and positively that the child was not Helen's baby but was the child of Percilla Johnson.

The defendant, Ashley Packer, proved by two or three witnesses that prior to the birth of this baby Helen Packer was pregnant. Helen corroborated her husband in that she did go to the General Hospital with him and was informed by the student doctors in the hospital that she was pregnant, but that they refused to permit her entry therein because her husband owned an automobile and had a good job at the L. & N. shops. They advised her that she would have to consult a private physician. She stated that she did and that the private physician told her she was not pregnant.

It appears that the court below took the view that

the judgment adopting the baby to Anna Mae Hall was void in that the mother did not consent to any such adoption and although he did not say so in his opinion it appears that he concluded that the whole thing was obtained by fraud. Anyway, the record clearly shows that Percilla Johnson did not give her consent. Thus viewing the matter the court decided that the child belonged to Percilla Johnson and so awarded.

We consider now the contention of appellants that the court wrongfully adjudged Percilla to be the mother of the child and wrongfully granted to her its care and custody without first setting aside and vacating the judgment of adoption. In this connection attention is first directed to the strict provisions of KRS 405.300 concerning notice to parties concerned in adoptive cases.

When the whole record affirmatively shows the absence of the condition upon which the court had jurisdiction to render a judgment, the judgment must be treated as void. For an exhaustive treatment of this question see Baker v. Baker, Eccles & Co., 162 Ky. 683, 173 S. W. 109, L. R. A. 1917 C. 171. There is no record of any notice to Percilla Johnson, the mother of the child. She never waived nor relinquished her rights in the child. Yet there are indications in this record from which inference arises that the petitioners for adoption had notice that the child's parentage was in question. Even in the divorce proceedings it appears an effort was made to threaten Helen Packer with prosecution if she should testify that she was not the mother of the child in question. This would indicate that at that time she was denying motherhood of this child. The court below, no doubt, took the view, and correctly so, that the judgment of adoption was void. Having taken this view it follows that immunity against collateral attack does not exist when the judgment so assaulted is void. See Booth v. Copley, 283 Ky. 23, 140 S. W. 2d 662.

In Commonwealth ex rel. Dummit, Atty. Gen. et al., v. Jefferson County, et al., 300 Ky. 514, 189 S. W. 2d 604, 606, 167 A. L. R. 512, we said: "It likewise tends to lessen the practical distinction between erroneous and void judgments based on the wholesome public policy which facilitates the final determination of disputed issues by decreeing that the former may be attacked

only directly, that is, by appeal or in the manner prescribed by Sections 344, 414 and 518 of the Civil Code of Practice, and the latter collaterally only where the fact which rendered them void, namely, the lack of jurisdiction in the Court to render them, appears on the face of the record. See White et al. v. White, 294 Ky. 563, 172 S. W. 2d 72.''

Thus, it follows that in a habeas corpus proceeding a parent may, in seeking to obtain the discharge of an infant from a detention which is illegal, also bring into issue controversies concerning the right to the custody of an infant. Where the latter is in issue, the proceeding partakes of the incidents of a writ in equity and is considered to be one in rem, the child being the res. See Setser v. Caldwell, 300 Ky. 356, 188 S. W. 2d 451.

Here the defendants put in issue that question by claiming the right to the care and custody by reason of the adoption. The judgment of adoption being void as appears affirmatively on the record, the court properly treated it as such. Further comment seems unnecessary.

Wherefore, the judgment is affirmed.