**Bridgett WRIGHT, Appellant**

v.

**ECOLAB, INC.; Medical Company, Inc.; OR Solutions, Inc.; and Russell A. Swigart, Appellees**

**2013–SC–000653–DG**

Supreme Court of Kentucky.

RENDERED: JUNE 11, 2015

Counsel for Appellant: James Walden Morgan, Jr., Steven Russell Dowell, Newport

Counsel for Appellees Ecolab, Inc.; Medical Company, Inc.; and OR Solutions, INC.: Richard Simon Cleary, Griffin Terry Sumner, Kathleen Biggs Wright, Frost, Brown, Todd, LLC, Louisville

Counsel for Appellee Russell A. Swigart: Jon Alig, Covington, Elizabeth A. Bellamy

## OPINION OF THE COURT BY JUSTICE VENTERS

On discretionary review, Appellant Bridgett Wright challenges an opinion of the Court of Appeals determining that the summary judgment entered against her by the Kenton Circuit Court was an interlocutory, non-final and non-appealable order, which did not contain the finality language required by CR 54.02. Specifically, the Court of Appeals ruled that the circuit court's entry of a *nunc pro tunc* [1] order purporting to interject, retroactively, the necessary finality language into the summary judgment could not cure the deficiency, and that the "relation forward" doctrine as described in *Johnson v. Smith,* 885 S.W.2d 944 (Ky.1994), did not apply under the present circumstances so as to rescue the premature notice of appeal.

Appellant contends that, pursuant to the relation forward doctrine, her premature notice of appeal should be deemed to have related forward to the time of the entry of the *nunc pro tunc* order, ostensibly incorporating the requisite CR 54.02(1) finality language into the circuit court's original summary judgment order, and by virtue of this device be adjudged as an appeal

---

1. *"Nunc pro tunc"* is defined in Black's Law Dictionary as follows: "Having retroactive legal effect through a court's inherent power <the court entered a *nunc pro tunc* order to correct a clerical error in the record>. 'When an order is signed *'nunc pro tunc'* as of a specified date, it means that a thing is now done which should have been done on the specified date.'" Black's Law Dictionary (9th ed.2009) (citations omitted).

brought in timely fashion from a final and appealable order.

As further explained below, the filing of a notice of appeal divested the circuit court of jurisdiction over the particular case, and transferred that jurisdiction to the Court of Appeals. Therefore, the circuit court was without jurisdiction to enter a *nunc pro tunc* order, and that attempt to bestow finality upon the summary judgment was ineffective. Consequentially, we affirm the Opinion and Order of the Court of Appeals dismissing the appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Because the issues we review in this matter relate primarily to procedural aspects of the case, a recitation of particular facts giving rise to Appellant's claims against Appellees is unnecessary. For the sake of providing context, however, the essential allegations of Appellant's claim are as follows.[2]

Russell Swigart was a district sales manager for OR Solutions, Inc. (ORS). ORS was a medical equipment company that was eventually renamed Ecolab, Inc., after selling off substantially all of its assets to Medical Company, Inc. We collectively refer to these three corporate entities as "Appellees."[3]

In January 2007, Swigart hired Appellant to fill a sales position. According to Appellant, within weeks after she was hired, Swigart began making unwelcome romantic overtures toward her. Under the threat that Swigart would discharge her if she refused, Appellant acquiesced briefly to a personal relationship with Swigart. After Appellant ended the personal relationship, Swigart embarked upon a campaign of harassment and intimidation that included sending Appellant vulgar, frightening, and insulting emails and text messages, and spreading rumors about her. Swigart resigned from ORS but persisted in his harassment of Appellant. Finally, he broke into Appellant's home and savagely killed two of her cats and vandalized the residence with their remains.[4] Appellant obtained counseling, which was paid for by ORS. She tried to continue with her employment with ORS, but ultimately was unable to do so.

On November 23, 2009, Appellant filed suit naming Swigart as the only defendant. Apparently Appellant acquired information during the litigation leading her to believe that Appellee ORS was aware of Swigart's violent disposition toward women and that it failed to take appropriate measures to protect her. On July 1, 2011, about 20 months after the filing of the complaint against Swigart, Appellant amended her complaint to assert direct claims against Appellees.

Appellees moved for summary judgment, arguing that Appellant's claims against them were barred by the applicable statute of limitations. The trial court sustained the motion and entered a summary judgment dismissing the claims against the Appellees as being time-

---

**2.** Because this case is before us upon an award of summary judgment to the Appellees, for purposes of our review we accept Appellant's version of the facts as true. *See Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476 (Ky.1991).

**3.** Russell Swigart is also named as an Appellee in this appeal; however, he has not meaningfully participated in the proceedings before

us, nor do any of the arguments we address relate to issues concerning his potential liability in the lawsuit; therefore our reference to "Appellees" refers only to the corporate Appellees.

**4.** Consequently, Swigart was convicted of first-degree burglary and two counts of cruelty to animals.

barred. The summary judgment left Swigart in the case as the sole remaining defendant against whom the litigation would proceed, and it did not recite any of the finality language provided in CR 54.02(1) for cases involving multiple parties and orders that adjudicate the rights and liabilities of some, but not all, parties.

As pertinent here, CR 54.02(1) provides: When ... multiple parties are involved, the court may grant a final judgment upon one or more but less than all of the ... parties only upon a determination that there is no just reason for delay. The judgment shall recite such determination and shall recite that the judgment is final. In the absence of such recital, any order or other form of decision, however designated, which adjudicates ... the rights and liabilities of less than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is interlocutory and subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Pursuant to CR 59, Appellant filed a motion to alter, amend, or vacate the summary judgment on substantive grounds not connected with the judgment's finality. By an order entered on October 22, 2012, the trial court denied the CR 59 motion; that order also failed to provide the CR 54.02 finality language.

On November 9, 2012, Appellant filed a notice of appeal from the summary judgment. The notice of appeal designated as Appellees: Swigart, ORS, Medical Company, Inc., and Ecolab. Appellees (the corporate entities) filed with the Court of Appeals a motion to dismiss the appeal,

arguing that the appeal was improper because it was not taken from a final and appealable order.

The next twist in this procedural knot occurred back in the circuit court on December 20, 2012: the circuit court entered an order entitled "Nunc Pro Tunc Judgment and Order"[5] which stated, in relevant part, as follows:

The Summary Judgment entered herein August 31, 2012 and the Order Overruling the Plaintiffs Motion to Alter, Amend or Vacate the Summary Judgment entered October 22, 2012 be and hereby are made a "final judgment" and "final order" Nunc Pro Tunc, as though entered August 31, 2012, and October 22, 2012, respectively. The court clearly envisioned that the appeal of the Summary Judgment and Order Overruling the Plaintiffs Motion to Alter, Amend or Vacate the Summary Judgment would proceed to a conclusion before a trial on the claims against the individual, Russell A. Swigart. There is no just reason for delay.

Armed with this new order, Appellant then argued to the Court of Appeals that the *nunc pro tunc* order had the effect of ripening the interlocutory summary judgment into a final and appealable judgment, and thus, the existing notice of appeal could be deemed to have been properly filed. The Court of Appeals rejected that analysis. Ultimately, it concluded that the *nunc pro tunc* procedure employed by the trial court could not have retroactively conferred finality upon an order that was not originally designated as final, and that the relation-forward doctrine of *Johnson v. Smith,* 885 S.W.2d 944 (Ky.1994), did not

---

5. Appellant contends that the circuit court entered the *nunc pro tunc* order entirely *sua sponte,* whereas Appellees contend that the order was entered at the instigation of Appellant through improper *ex parte* contact with the circuit court. For purposes of our disposition of the case the competing versions of this event are irrelevant.

apply under the circumstances presented here. For the reasons set forth below, we affirm the Court of Appeals.

## II. ANALYSIS

As simplified and restated, Appellant's sole argument on appeal is that the relation forward doctrine, as explained in *Johnson v. Smith,* is applicable to the circumstances of this case; and that upon application of that doctrine the notice of appeal filed in connection with the interlocutory summary judgment relates forward in time to the entry of the *nunc pro tunc* order, thereby rendering the notice of appeal as having been filed in connection with a final and appealable order, namely: the summary judgment, as retroactively modified by the *nunc pro tunc* order.

### A. The Summary Judgment was not an Appealable Order or Judgment

CR 54.01 provides that "A judgment is a written order of a court adjudicating a claim or claims in an action or proceeding. A final or appealable judgment is a final order adjudicating *all the rights of all the parties* in an action or proceeding, *or a judgment made final under Rule 54.02.*" (emphasis added). The circuit court's order granting summary judgment to the corporate defendants clearly did not adjudicate all of the rights of all of the parties; Appellant's claims against Swigart remained viable and pending in the circuit court following the summary judgment dismissing Appellant's claims against the corporate defendants. Therefore, unless the summary judgment, in either its original form or as modified pursuant to the CR 59 order, was made final by application of CR 54.02, there was not an appealable order from which Appellant could file a notice of appeal.

CR 54.02(1), as set forth above, provides that a summary judgment disposing of less than all of the claims against all of the parties will be deemed to be final and appealable *only if* it recites the trial court's determination that "there is no just reason for delay" and that "the judgment is final." The rule explicitly provides that "[i]n the absence of such recital, any order or other form of decision, however designated, which adjudicates less than all the claims or the rights and liabilities of less than all the parties *shall not terminate the action as to any of the claims or parties, and the order or other form of decision is interlocutory.*" CR 54.02(1) (emphasis added). Pursuant to this rule, an order that is otherwise interlocutory because it does not adjudicate all of the claims of all of the parties will nevertheless be made final and appealable if it includes the trial court's recital of the finality language.

Obviously, at least prior to the entry of the *nunc pro tunc* order on December 20, 2012, the summary judgment was a non-appealable interlocutory order. What was said in *Huff v. Wood–Mosaic Corp.,* aptly describes the situation here:

Plainly the judgment did not adjudicate all of the claims in the action. Therefore, under CR 54.02, in order for the judgment to be appealable it was necessary that the trial court make a determination that there was no just reason for delay, and to recite in the judgment such determination and that the judgment was final. There were no such determination and recitation here. Hence the judgment is not appealable.[ ] This court on its own motion will raise the issue of want of jurisdiction if the order appealed from lacks finality.

454 S.W.2d 705, 706 (Ky.1970) (citations omitted.) *See also McCreary County Bd. of Ed. v. Stephens,* 454 S.W.2d 687, 688 (Ky.1968) ("Since the judgment did not adjudicate the claim between Stephens and the McCreary County Board of Education

and was not made final under CR 54.02 it was interlocutory."); and *Vaught v. Vaught,* 296 Ky. 754, 178 S.W.2d 590, 591 (1944) ("[A]n appeal from an interlocutory order will be dismissed[.]"). Based upon the foregoing authorities, it is beyond dispute that following the disposition of the CR 59 motion, when the notice of appeal was filed on November 9, 2012, there was no final and appealable order from which a procedurally proper appeal could be taken.

We acknowledge that there are a few exceptions to the rule that an appeal may not be taken from an interlocutory order. For example, an order denying a claim of sovereign immunity is immediately appealable even in the absence of a final judgment. *See Breathitt County Bd. of Educ. v. Prater,* 292 S.W.3d 883, 887 (Ky.2009). Such exceptions are based upon substantial policy considerations. Creating an additional exception to fit the present circumstances, which is essentially a garden variety appeal, would overwhelm and ultimately eliminate the rule entirely.

## B. Effect of the *Nunc Pro Tunc* Order

■ Appellant argues that the circuit court's subsequent *nunc pro tunc* order adequately cured the lack of finality problem by supplying, retroactively, the essential finality recitals needed to satisfy CR 54.02(1). The pending notice of appeal could then be regarded as "relating forward" in time, to the date of the *nunc pro tunc* order, thereby curing all of the preexisting procedural infirmities and perfecting her appeal of the summary judgment. We disagree that our procedural rules and case precedent permit this result.

■ The trial court's entry of the *nunc pro tunc* order after the filing of the notice of appeal runs afoul of our well-established rule, as stated in *Johnson v. Commonwealth,* 17 S.W.3d 109, 113 (Ky.2000): "As a general rule, except with respect to is-

sues of custody and child support in a domestic relations case, the filing of a notice of appeal divests the trial court of jurisdiction to rule on any issues while the appeal is pending." *See also City of Devondale v. Stallings,* 795 S.W.2d 954, 957 (Ky.1990) ("A notice of appeal, when filed, transfers jurisdiction of the case from the circuit court to the appellate court. It places the named parties in the jurisdiction of the appellate court."). Hence, upon the filing of a notice of appeal, a circuit court loses jurisdiction over the particular case, owing to the transfer of that jurisdiction to the appellate court.

Here, the circuit court's attempt to retroactively grant finality to the summary judgment occurred after the filing of the notice of appeal, and thus was undertaken after the circuit court had been divested of jurisdiction over this case. The *nunc pro tunc* order, issued by the court after it had lost jurisdiction over the matter, could have no effect upon the previously entered summary judgment. *See Packer v. Johnson,* 307 Ky. 376, 211 S.W.2d 150, 153 (1948) (A judgment must be treated as void where the whole record affirmatively shows the absence of a condition upon which the court's jurisdiction to render such judgment depended.).

We recognize that there are circumstances in which a trial court may retain jurisdiction over some aspects of a case despite the filing of a notice of appeal. In *Garnett v. Oliver,* our predecessor court held that "if the appeal from the particular order or judgment does not bring the entire cause into the appellate court ... further proceedings in the conduct of the cause may properly be had in the lower court." 242 Ky. 25, 45 S.W.2d 815, 817 (1931). *See also Commonwealth v. Bailey,* 71 S.W.3d 73, 84 (Ky.2002) ("An interlocutory appeal, however, generally only deprives the trial court of the authority to act

further in the matter that is [the] subject of the appeal, and the trial court is not divested of the authority to act in matters unrelated to the appeal."). That, however, is not the case here. The very deficiency that the circuit court attempted to rectify through its *nunc pro tunc* order was an integral part of the summary judgment from which the notice of appeal was taken.

We cannot escape the conclusion that the *nunc pro tunc* order was entered by a court that lacked jurisdiction over the matter, and is therefore a nullity. As such, it could have no effect at all and, therefore, it did not supply the summary judgment with the CR 54.02(1) language of finality that would have otherwise made the summary judgment a final and appealable order.

## C. The Relation Forward Doctrine

Notwithstanding the above authorities, Appellant argues that the relation forward rule as described in *Johnson v. Smith, supra,* salvages her appeal. We are unable to agree with her. *Johnson* differs on a critical factual point and is easily distinguishable from the case at hand.

*Johnson* involved a dispute among family members over a trust fund. A bench trial resulted in a final judgment divesting several parties of their rights in the trust. Some of the divested family members promptly filed notices of appeal to challenge the trial court's ruling forthwith. However, other divested family members filed a CR 59 motion which, pursuant to CR 73.02(1)(e), suspended the time for filing a notice of appeal. *See Personnel Bd. v. Heck,* 725 S.W.2d 13, 18 (Ky.App.1986) ("A motion pursuant to CR 59, however, converts a final judgment to an interlocutory judgment. CR 73.02(*l* )(e).").

The *Johnson* Court held that, although the notices of appeal had been taken from an order that was non-final (due to the pending CR 59 motions), the relation forward doctrine recognized by the federal courts should be applied to save the premature notice of appeal. We said in *Johnson,* citing to (and quoting) *FirsTier Mtge. v. Investors Ins. Co.,* 498 U.S. 269, 111 S.Ct. 648, 112 L.Ed.2d 743 (1991), "The U.S. Supreme Court states the premature notice of appeal protects the litigant who 'reasonably but mistakenly believes [the order or judgment entered against him] to be a final judgment, while failing to file a notice of appeal from the actual final judgment.' " 885 S.W.2d at 950.

As explained by the United States Supreme Court, construing the applicable federal rule:

[A] premature notice of appeal does not ripen until judgment is entered. Once judgment is entered, the Rule treats the premature notice of appeal "as filed after such entry[,]" ... it permits a premature notice of appeal from [a] bench ruling to relate forward to judgment and serve as an effective notice of appeal *from the final judgment.*

498 U.S. 269, 275, 111 S.Ct. 648, 112 L.Ed.2d 743 (1991).

*Johnson* did not present the situation we have before us in this case. In *Johnson,* the notices of appeal were premature because, pursuant to CR 59, the trial court retained jurisdiction until the CR 59 motion was resolved. In other words, because of the pending CR 59 motion, the notices of appeal could not effectively transfer jurisdiction of the case to the appellate court. In contrast with *Johnson,* Appellant's notice of appeal was filed within thirty days of the circuit court's ultimate summary judgment disposition, i.e., within thirty days after Appellant's CR 59 motion had been ruled upon, when there were no pending motions for post-judgment relief in the circuit court, and therefore, it effec-

tively transferred jurisdiction to the Court of Appeals.

 Moreover, as noted by the Supreme Court in *FirsTier* and this Court in *Johnson,* the relation forward doctrine gives effect only to notices of appeal filed prior to the entry of a final judgment. The doctrine does not dispense with the need for a final judgment; it simply applies in limited circumstances to dispense with the need for a final judgment to be entered prior to the filing of notice of appeal. Ultimately, there still must be a final order or judgment to which the premature notice of appeal can relate. In *Johnson,* as in *FirsTier,* there was such a final judgment. Here however, because the trial court lost jurisdiction of the case when Appellant filed her notice of appeal, the *nunc pro tunc* order of December 20, 2012, was a nullity; it could not operate to cure the summary judgment's lack of finality. Consequently, there was never a final order to which Appellant's notice of appeal could relate.[6]

We have examined the cases cited by Appellant in support of her argument that the relation forward rule should be applied to this case, and we find those cases to be distinguishable. Additionally, we decline Appellant's invitation to expand the relation forward rule so as to cover the circumstances of this case. To do so would interject ambiguity into the application of CR 54.01, CR 54.02, and CR 73.02. The use of a *nunc pro tunc* order, as was attempted in this case, substantially reduced the clarity of the rule stated in *City of Devondale v. Stallings, supra,* delineating rules that govern the transfer of juris-

diction from the circuit court to the Court of Appeals.

Based upon the foregoing analysis, we conclude that the relation forward doctrine does not apply in the circumstances of this case. We conclude that the Court of Appeals correctly determined that no final and appealable judgment had been entered. The order of the Court of Appeals dismissing the appeal was consistent with the applicable rules. Accordingly, we affirm.

## III. CONCLUSION

For the foregoing reasons, the Opinion and Order Dismissing entered by the Court of Appeals is affirmed.

All sitting. All concur.

---

6. It appears from the record before us, based upon our conclusion that the summary judgment entered herein never acquired finality, that there has never been a final judgment of the circuit court adjudicating the claims of the parties to a final conclusion. Upon dis-

missing of this appeal, jurisdiction over the case transfers back to circuit court where, presumably, a final order will be eventually entered from which Appellant may obtain the appellate relief she sought here.