RENDERED: AUGUST 29, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1233-MR

KELLI GWENDOLYN WRIGHT                                    APPELLANT

v.          APPEAL FROM FLEMING CIRCUIT COURT
            HONORABLE ABIGAIL E. VOELKER, JUDGE
            ACTION NO. 21-CI-00025

JEFFREY JAMES WRIGHT                                       APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, LAMBERT, AND MOYNAHAN, JUDGES.

MOYNAHAN, JUDGE: The Appellant, Kelli Gwendolyn Wright ("Kelli"),

appeals from an Order of the Fleming Circuit Court that classified the farm she

shared with the Appellee, Jeffrey James Wright ("Jeff"), as marital property. After

careful review of the record, we AFFIRM.

# BACKGROUND

The parties married in Texas in 2005. Jeff legally adopted Kelli's two children from her previous marriage, and the couple later had a child together. Throughout the marriage, Kelli's mother and stepfather Carol and James Chandler gave the couple generous gifts, including buying a truck and a motorcycle for Jeff. In 2008, the Chandlers wrote a check for $236,660.42, made payable only to Jeff, for the purpose of purchasing a family home in Texas. A house was soon purchased, and both Kelli and Jeff lived there with the children for the next six years. Both of their names were on the deed to that property.

In 2014, the Wright family relocated to Kentucky. Kelli and Jeff sold the Texas house and deposited the proceeds from the sale into a joint bank account. One week later, they used those funds to buy a farm in Fleming County, Kentucky. Approximately $54,000 was left over after the purchase, and that money was used to renovate the farmhouse and procure some farm equipment. Again, both Kelli and Jeff were named on the deed to the property.

The parties legally separated in 2018, and Jeff filed for divorce in 2020. After divorce proceedings had been initiated, Mr. Chandler stated that the 2008 check had been a gift to Kelli alone. He also stated that it was an advance against her future inheritance. There is no contemporaneous written documentation or observable action to support either assertion. Jeff testified at the

hearing that he was never told that the 2008 check was a gift to Kelli alone, nor that it was an advance of her anticipated inheritance. He further stated that both Mr. and Mrs. Chandler knew that the money was going to be used for the benefit of the entire Wright household. Mr. Chandler testified at the hearing that when he wrote the check, he and Mrs. Chandler did know that Jeff would be living in the house and enjoying full use and benefit of the property. All parties agreed that there were no troubles within the Wright marriage at this time.

In August of 2021, the Domestic Relations Commissioner ("DRC") issued an Order Recommending that a Decree of Dissolution of Marriage granting a divorce be entered. Kelli and Jeff had reached prior agreement regarding custody arrangements and child support for their one minor child as well as for the disposition of various items of personal property. However, they disagreed over the fate of the farm that was held in both of their names. The DRC classified the farm as marital property and recommended that it be sold. Upon final sale, the proceeds were to be applied towards several outstanding federal tax liens. After these tax obligations were met, the remaining proceeds were to be divided equally between Kelli and Jeff.

## PROCEDURAL HISTORY

Kelli filed Exceptions to the DRC's Recommended Order and Jeff filed a Response to the Exceptions. The Fleming Circuit Court accepted and

considered both filings. On September 24, 2021, the court ruled that there was sufficient evidence to support the characterization of the Fleming County farm as marital property and adopted the DRC's Recommended Order in full.

Kelli appealed the circuit court's order. However, after the appeals process was underway, this Court discovered that the circuit court had never officially entered the final divorce decree. Fleming Circuit Court attempted to cure the oversight by entering a *nunc pro tunc* decree in December 2022. This Court rejected the decree, noting that the trial court had no jurisdiction over the matter once the notice of appeal had been filed.[1] Therefore, Kelli's first appeal was dismissed for lack of a final and appealable order.[2]

Kelli filed a second notice of appeal soon thereafter. This Court dismissed that appeal as untimely because the notice was filed after the thirty-day deadline had run. However, this Court's calculated deadline relied on the entry date of the *nunc pro tunc* decree, an invalid order. Kelli, noting this contradiction, filed a motion for discretionary review with the Kentucky Supreme Court.

The Supreme Court granted the motion and determined that this Court should have dismissed the second appeal as interlocutory, rather than untimely. Thus, since the *nunc pro tunc* decree had been previously nullified by this Court,

---

[1] *Wright v. Ecolab, Inc.*, 461 S.W.3d 753 (Ky. 2015).

[2] *See* Order Dismissing Appeal dated December 28, 2022, Case No. 2021-CA-1240-MR.

Kelli had failed to appeal from a final and appealable order for a second time. The Supreme Court vacated our Court's order dismissing the appeal as untimely and remanded for entry of an order dismissing the appeal for failure to appeal from a final and appealable order. The Supreme Court further directed the parties to return to circuit court and obtain a valid divorce decree to officially dissolve the marriage and provide a final and appealable order for the record.[3]

While the case was still under review at the Supreme Court, the circuit court entered a final decree of dissolution on September 3, 2024, that granted the parties their divorce. The prior 2021 order containing the farm's marital property classification, was incorporated by reference into this latter order. With a final and appealable order in place, Kelli filed a third appeal on October 1, 2024. On appeal, Kelli continues to argue that the circuit court erred in its classification of the farm as marital property. She maintains that the property is a non-marital asset that should be awarded to her alone.

## STANDARD OF REVIEW

Kentucky Civil Rule of Procedure ("CR") 52.01 provides that "Findings of fact[] shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. The findings of a commissioner, to the extent that the court adopts

---

[3] *See Wright v. Wright*, No. 2023-SC-0175-DG (Ky. Sep. 20, 2023).

them, shall be considered as the findings of the court."

A judgment is not clearly erroneous if it is supported by substantial evidence, which is defined as "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998) (citing *Kentucky State Racing Commission v. Fuller*, 481 S.W.2d 298, 308 (Ky. 1972)).

"Finally, a trial court has wide discretion in dividing marital property; and we may not disturb the trial court's rulings on property-division issues unless the trial court has abused its discretion. The question of whether an item is marital or nonmarital is reviewed under a two-tiered scrutiny in which the factual findings made by the court are reviewed under the clearly erroneous standard and the ultimate legal conclusion denominating the item as marital or nonmarital is reviewed *de novo*." *Smith v. Smith*, 235 S.W.3d 1, 6 (Ky. App. 2006) (citation omitted).

## ANALYSIS

Kentucky Revised Statute ("KRS") 403.190(3) establishes a presumption that all property obtained during a marriage is to be considered marital property unless it falls within one of the specific exceptions enumerated in KRS 403.190(2), those exceptions being:

> (a) Property acquired by gift, bequest, devise, or descent during the marriage and the income derived therefrom

unless there are significant activities of either spouse which contributed to the increase in value of said property and the income earned therefrom;

(b) Property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(c) Property acquired by a spouse after a decree of legal separation;

(d) Property excluded by valid agreement of the parties; and

(e) The increase in value of property acquired before the marriage to the extent that such increase did not result from the efforts of the parties during marriage.

The courts have strictly held to the mandate that an exception must apply for property acquired during a marriage to be considered non-marital. *Stallings v. Stallings*, 606 S.W.2d 163, 164 (Ky. 1980). In asserting the gift exception of KRS 403.190(2)(a), Kelli bears the burden of proving the property in question was a gift made solely to her, to the exclusion of Jeff, and her proof must be "clear and convincing" to overcome the statutory presumption that property owned during the marriage is marital. Kelli cites *Sexton v. Sexton*, 125 S.W.3d 258 (Ky. 2004), and argues she has met this burden by tracing the source of the original funds back to her parents. However, the holding in *Sexton* relied upon a factual gift analysis, as described in *O'Neill v. O'Neill*, 600 S.W.2d 493 (Ky. App. 1980),

that goes beyond mere funds tracing.  In *O'Neill*, our Court set forth four factors a trial court must weigh to determine if a transfer of funds was a gift:

> 1) the source of the money with which the gift was purchased;
> 2) the intent of the donor at that time as to the intended use of the property;
> 3) the status of the marriage relationship at the time of the transfer; and
> 4) whether there was a valid agreement that the transferred property was to be excluded from marital property.

*Id.* at 495.

Additionally, when the original gift is from a third party, as in the case at hand, the Kentucky Supreme Court adds a fifth factor for consideration: whether the donor received any compensation in return for the transfer.  *Sexton*, 125 S.W.3d at 268.

The first factor above, the source of the money used to purchase the gift, is not disputed.  Kelli's parents gave the money that was used to purchase the Texas house in 2008.  However, consideration of the remaining factors lends support to the Kentucky farm's classification as marital property.  The donors intended their initial gift to be used to purchase a family home, the parties were married at the time the funds were used to purchase both the Texas house and the Kentucky farm, there was no agreement or consensus between all the parties that either property was to be specifically excluded from marital property, and, other

-8-

than perhaps the general satisfaction of knowing that their grandchildren had a better living space, Kelli's parents received no compensation for their generosity.

In *Sexton*, the court also prioritized the second listed factor, donor intent, as the primary determinant of whether a gift was made jointly to both spouses or individually to one spouse. They stated that, although donor testimony is highly relevant to determining intent, the intention of the donor may also be inferred by reviewing the surrounding facts and circumstances, the relationship of the parties, and the conduct of the parties.[4] *Id.* at 269. Therefore, the final determination of whether a gift was made jointly or individually is ultimately a factual one that is subject to CR 52.01's clearly erroneous standard of review.

Although Kelli traced the funds for the farm back to a 2008 check from her parents, that provides little insight into the primary factor of donor intent when the monetary gift was initially made. While the Chandlers offered testimony asserting the funds were meant to be a gift for Kelli and her children only, other contemporaneous evidence – including that the check was made out to Jeff alone and that the deed for the initial home in Texas (and the later farm in Kentucky) included the names of both Kelli and Jeff – leads to the opposite inference. While the circuit court here could have solely relied on the testimony of Kelli's parents to

---

[4] The Kentucky Supreme Court cited 38 AM. JUR. 2D *Gifts* §19 (1999) in support of applying this totality of the circumstances analysis when determining whether a gift was intended for joint or individual recipients.

-9-

conclude the financial gift was only meant for her, its opposite finding implies it discredited the parents' testimony.

Due to the difficulty trial courts face in "weeding through emotionally-charged testimony and often slanted evidence to reach a fair and equitable result[,]" we afford them "broad discretion in dividing marital property and marital debt." *Jones v. Livesay*, 551 S.W.3d 47, 51 (Ky. App. 2018). Indeed, "[w]e will not disturb a trial court's rulings on these issues in the absence of an abuse of its discretion or clearly erroneous factual findings." *Id.* Here, the circuit court was the finder of fact and had the sole authority to judge the credibility of witnesses and weigh the evidence before it. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). While the donor parents' testimony was relevant in this instance, their intent could also be inferred by analyzing the totality of the factual circumstances. Here, focusing on a time when all parties acknowledged the Wrights' marriage was not troubled, the Fleming Circuit Court decided that Kelli could not establish the monetary gift from her parents was meant solely for her. Thus, the presumption that all property obtained during a marriage is considered marital property applies.

## CONCLUSION

For the reasons set forth above, the September 2024 Order of the Fleming Circuit Court is hereby AFFIRMED.

ALL CONCUR.


BRIEF FOR APPELLANT:        BRIEF FOR APPELLEE:

Alex Smith                  Bradley Harn
Maysville, Kentucky        Flemingsburg, Kentucky